# LIBBY, McNEILL & LIBBY

### v.

## MICHAEL SCHERMAN.

### *Filed at Ottawa May 9, 1893.*

1. NEGLIGENCE—*sufficiency of declaration against a corporation.* In an action by a servant against a corporation, his master, to recover for a personal injury caused by negligence, the declaration need not show affirmatively, by express averments, that the injury complained of was caused by the negligent act of agents or servants of the defendant who were not fellow-servants of the plaintiff. The allegation that the defendant,—that is, the corporation itself,—negligently did the acts complained of, excludes, *ex vi termini,* the theory that they were performed by parties for whose conduct the defendant was not responsible.

2. This case is clearly distinguishable from *Joliet Steel Co.* v. *Shields,* 134 Ill. 109. In that case the negligent acts complained of were affirmatively alleged to have been done by the defendant's servants, without showing that they were done by the class of servants whose acts would charge the principal with responsibility, while here the corporation itself was charged with the act of negligence.

3. SAME—*evidence—experiments of witnesses, and their opinions.* In an action to recover for a personal injury caused by negligence in taking out the contents of a barrel, leaving others above the same in a pile, whereby the barrels above fell, and one of them fell on the plaintiff, the defendant offered to prove by witnesses their experiments with piles of barrels similar to the one from which the barrels fell on plaintiff, and that a barrel located relatively the same as the empty barrel in question was entirely taken out without causing the pile to fall. The witnesses were also asked whether a barrel, located as was the one in question, could be taken out of the pile without causing it to fall or give way, or whether knocking out the head of the barrel thus situated, and removing the contents, would affect the stability of the pile : *Held,* that the evidence was not admissible, as the experiments, and the results and inferences shown from them by the witnesses, were mere collateral matters, having no legitimate bearing upon the issues before the jury.

4. In such case, the question is not whether a pile of barrels might not stand with an empty barrel situated as was the one in this case, but whether leaving such barrel in the condition shown rendered the support of the barrels above it less secure, and that, to such a degree as to constitute negligence, and whether the plaintiff's injury occurred as the result of such negligence.

5.  MASTER AND SERVANT—*master's liability for acts of vice-principal.*
One who has charge and control of other servants, and has authority
to govern and direct their movements in the branch of the principal's
business in which they are engaged, is, while acting in pursuance of
and within the scope of such authority, a vice-principal, so as to make
his acts and directions the acts and directions of the principal.

6.  Many servants who have no control over other servants may so
represent their principal as to render the latter responsible for their
acts and negligences.   Such is the case with all servants not standing
in the relation of fellow-servants to the plaintiff.

7.  SAME—*duty of master to furnish a safe place in which to work.*
The common law duty incumbent upon every employer, and which he
can not delegate to others in such manner as to relieve himself from
the consequences of its non-performance, is to furnish to his employe
a reasonably safe place in which to work, and to use proper diligence
to keep such place in a reasonably safe condition.

8.  A declaration alleged that the plaintiff, at the time he was in-
jured, was working for the defendant near a row of barrels, and that it
was the duty of the latter to keep and maintain such row of barrels in
such condition that they would not spread, tilt or fall upon the plain-
tiff while working near the same, yet the defendant, in disregard of
this duty, carelessly and negligently kept and maintained the row of
barrels defectively piled, and while so piled, drove in the head of one
of the barrels and removed the contents thereof, so that the barrel was
greatly weakened and rendered unable to support the weight of the
barrels piled above it, by means whereof the barrels spread, tilted and
fell upon the plaintiff and injured him :   *Held,* that the duty therein
alleged was the common law duty of the master, and that the failure
of the defendant to keep the place assigned to the plaintiff for the per-
formance of his work, in a safe condition, was the very gist of the action.

9.  SAME—*risks assumed by servant.*   In an action by a servant against
the master, the defendant asked the court to instruct the jury, that
"when an employment is attended with danger, a servant engaging in
it assumes the hazards of ordinary perils which are incident to it, and
if he receives an injury from an accident which is an ordinary peril of
the service undertaken by him, he can not recover for the injury."   'The
court modified the instruction by adding these words :   "But this ap-
plies only to perils or risks ordinarily incident to the service, and not
to those which are extraordinary, and which did not exist at the time
the servant engaged in the master's business, and which the servant
did not subsequently assume," and gave it as modified :   *Held,* no error
in the modification.

10.  The material question in the case was not whether the plaintiff
had assumed the risk of other perils incident to the service in which

he was engaged, but whether he had assumed the risk of the particular peril which caused his injury, viz., that arising from leaving an empty barrel, of the character of the one in question, with the head knocked out, near the bottom of the pile, and thus weakening the pile and causing the barrels above it to fall. Other perils incident to the service were wholly immaterial.

11. The instruction as asked had no application to the case, except upon the assumption that the particular peril in, question was one of the ordinary perils incident to the service, and, standing alone, it would have been likely to convey that assumption to the jury. To render it applicable and not misleading, it should have submitted to the jury the question whether that peril was, in point of fact, one of the ordinary perils of the service, and thus laid down the rule applicable in case that question should be decided in the affirmative, or it should have been modified, as was done, so as to lay down the rule which should govern in case of its negative decision.

12. PLEADING—*declaration—defects cured by verdict.* After verdict, a defective statement of a good cause of action is cured.

13. PRACTICE—*requiring plaintiff to remit part of his damages.* The practice of requiring the plaintiff to remit a portion of his damages and rendering judgment for the residue, when there is no ground for a new trial except that the damages awarded by the jury are excessive, is too well established in this State to be called in question.

14. VARIANCE—*how presented as a question of law.* To present the question of variance as one of law, the evidence must be objected to at the time it is offered, on that ground, or, when the variance becomes apparent, the party should move to exclude the evidence, or in some other appropriate way raise that question, so that the trial court can pass upon it; and to properly raise the question in any of these modes, the variance should be distinctly pointed out, so as to enable the trial court to pass upon it understandingly, and enable the plaintiff to obviate the objection by amendment.

15. One of the grounds of a motion for a new trial was, that "there is a variance between the declaration and the proof," but the variance was not pointed out: *Held,* that this was insufficient, and that it was the duty of the party complaining to point out the variance, if any, and to call attention to it specifically, and failing to do so he would be deemed to have waived the objection.

16. APPEALS AND WRITS OF ERROR—*questions of fact.* Whether the evidence does not accord with the declaration in a case, and that it does not sustain the verdict and judgment, are questions of fact, or, at most, mixed questions of law and fact, which can not be raised in this court on appeal from the judgment of the Appellate Court affirming the judgment of the trial court.

17. A proposition which does not assume that there was no evidence tending to prove the allegation of negligence as made in the declaration, but that the negligence proved by the preponderance of the evidence differs in its character and circumstances from that alleged, presents a mere question of fact, which this court can not review on appeal from the judgment of affirmance of the Appellate Court.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

This was an action on the case, brought by Michael Scherman against Libby, McNeill & Libby, a corporation, to recover damages for a personal injury. The declaration originally consisted of two counts, but the first count was dismissed, and the trial was had upon the second count alone. That count alleges that, at the time of the injury complained of, the defendant was possessed of and operating a packing house; that the plaintiff was in the defendant's employ as a laborer, and as such was working for the defendant, with all due care and caution for his safety, at and near a certain pile of pork barrels, which were piled in rows, one upon another, to a great height, to-wit, twelve feet; "that it then and there became and was the duty of the defendant to keep and maintain said piles of barrels in such condition that they would not spread, tilt or fall upon plaintiff while working for the defendant at and near the same, and not to do anything with or to said piles of barrels which would cause them to spread, tilt or fall upon the plaintiff while working at or near them in the business of the defendant; yet the defendant, in utter disregard of its duty in this behalf, then and there, carelessly and negligently, kept and maintained said rows of barrels defectively piled in rows one upon another, and while so defectively piled, drove in the head of one of said barrels and took therefrom the contents thereof, to-wit, certain brine and pork, so that the said barrel was then and there greatly weakened, and rendered unable to support the weight of the barrels piled

above the same, and by reason of the carelessness and negligence of defendant, in manner as aforesaid, and while plaintiff was in the exercise of all due care for his own safety, the said barrels spread, tilted, gave way and fell upon and against the plaintiff," thereby breaking the plaintiff's leg, and otherwise injuring him.

To this count the defendant pleaded not guilty, and at the trial, the jury found the defendant guilty, and assessed the plaintiff's damages at $7500. From this sum the plaintiff remitted $2500, and the court, after denying the defendant's motion for a new trial, and also its motion in arrest of judgment, gave judgment in favor of the plaintiff for $5000 and costs. That judgment, on appeal to the Appellate Court, was affirmed, and the present appeal is from the judgment of affirmance.

The facts, so far as they are necessary to a proper understanding of the questions raised by the assignments of error in this court, are these: The defendant is a corporation organized under the laws of this State, and is engaged in the business of maintaining and operating a packing house at the stock yards, in Chicago. The plaintiff is a Pole, who does not speak the English language, and who, about four weeks prior to the injury complained of, entered the employment of the defendant as a laborer. A few days prior to the injury, he was sent into the room where the injury afterwards occurred to pile barrels containing beef, and from that time until he was injured, he was engaged with other of the defendant's employes in that service.

The room was eighty feet east and west and seventy feet north and south, and was divided up into sections by rows of posts some sixteen feet apart, running across it from north to south. The barrels were piled across the room in rows five barrels high running north and south, except between the posts, where the rows were formed by standing the barrels on end, two barrels high, with a third lying on top. The barrels

had been piled in this manner until the room was filled, with the exception of a space at the end sufficient for two or three rows. In this space, which was about ten or twelve feet in width, the plaintiff and three other men were engaged in lifting barrels from the floor and placing them upon the pile or row they were constructing.

Matters being in this situation, at about five o'clock in the afternoon of the day previous to the one on which the injury occurred, one Morgenweck, who, as the evidence tends to show, had sole charge and direction of the men, came along and noticed that a barrel in the second tier from the floor was leaking. The row containing that barrel was already five barrels high, and Morgenweck sent for the cooper and had him come and try to stop the leak. The efforts of the cooper being ineffectual, Morgenweck, not wishing to lose time in tearing down the pile and having the defective barrel taken out, knocked in the head of the barrel and had its contents removed, leaving the empty barrel in its place in the pile. After this was done, Morgenweck, as the evidence tends to show, said to or in the hearing of the plaintiff and those working with him: "Now everything is all right; go ahead to work," and after standing there a few minutes, he walked out of the room.

The plaintiff and those with him thereupon went to work, but quit a few minutes later for the night. The next morning at seven o'clock the work was resumed, and as the testimony of the plaintiff's witnesses tends to show, another row of barrels was finished and a second commenced, and as they were at work on that row at a point directly opposite the empty barrel, the barrels from the top of the two rows next to the one upon which they were working, fell towards them, and in falling, struck the plaintiff and broke his right leg about two inches above the ankle.

35—146 ILL.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellant:

The declaration does not state a cause of action. *Railway Co.* v. *Dwyer*, 41 Ill. App. 522; *Joliet Steel Co.* v. *Shields*, 134 Ill. 209.

The evidence is variant from the allegation of the declaration, and is not sufficient to sustain the judgment.

The court erred in refusing to admit evidence offered by the defendant. It was not necessary that the witnesses should be experts. Wharton on Evidence, sec. 512; *Clinton* v. *Howard*, 42 Conn. 306; *Pauton* v. *Norton*, 18 Ill. 495; *Alexander* v. *Mt. Sterling*, 71 id. 366; *Railway Co.* v. *Pratt*, 15 Bradw. 177.

The fourth instruction given for plaintiff would be good law in a case involving the safety of the premises, but as applied to this case it is wholly misleading and erroneous. The plaintiff can only recover for the specific acts of negligence alleged in his declaration. *Manufacturing Co.* v. *Ballou*, 71 Ill. 417; *Railway Co.* v. *Troesch*, 68 id. 545; *Railway Co.* v. *Bragonier*, 119 id. 51.

Defendant's third instruction announced a correct rule, and it was error to modify the same. *Railway Co.* v. *Hutchinson*, 120 Ill. 587.

The court erred in rendering a judgment for $5000, after finding that the verdict rendered by the jury should be set aside as excessive. *Thomas* v. *Fisher*, 71 Ill. 576; *Railway Co.* v. *Cummings*, 20 Bradw. 333; *Lowenthal* v. *Strang*, 90 Ill. 74; *Rolling Mill Co.* v. *Gillen*, 100 id. 52.

Messrs. GIBBONS, KAVANAGH & O'DONNELL, for the appellee:

Morgenweck was not a fellow-servant with the plaintiff. *Coal Co.* v. *Wombacher*, 134 Ill. 57; *Railroad Co.* v. *May*, 108 id. 288; *Rolling Mill Co.* v. *Johnson*, 114 id. 57; *Railway Co.* v. *Hauck*, 121 id. 259; 1 Shear. & Redfield on Negligence, 217.

On the question of variance, and mode of taking advantage of the same, see *Hite* v. *Blanford*, 45 Ill. 9; *Joliet Steel Co.* v. *Shields*, 134 id. 209; *Railway Co.* v. *Harwood*, 90 id. 425.

Any defect in the declaration is cured by the verdict. *Railway Co.* v. *O'Connor*, 115 Ill. 254; *Keegan* v. *Kennan*, 123 id. 292; *Mechanicsburg* v. *Meredith*, 54 id. 84:

As to the liability of the master for injury to the servant, and the risks assumed by the latter, see *Jackson* v. *Railway Co.* 77 Ga. 82; *Railway Co.* v. *May*, 108 Ill. 288; *Chicago* v. *McMahon*, 30 Ill. App. 358; *Pressed Brick Co.* v. *Sabowick*, 38 id. 531; *Dale* v. *Railway Co.* 63 Mo. 455; *Mahan* v. *Railway Co.* 73 N. Y. 585; *Kain* v. *Smith*, 86 id. 373; *Hough* v. *Railway Co.* 100 U. S. 225; 1 Shear. & Redfield on Negligence, secs. 186, 214.

The evidence excluded was incompetent. *Kolb* v. *Stamping Co.* 33 Ill. App. 490; *Railway Co.* v. *Clayberg*, 107 Ill. 644; *Hodge* v. *Bearce*, 129 id. 87.

The opinions of witnesses should not be received as evidence, where all the facts upon which such opinions are founded can be ascertained and made intelligible to the court or jury. *Chicago* v. *McGovern*, 78 Ill. 347; *Hopkins* v. *Railway Co.* id. 32; *Gaslight Co.* v. *Muthe*, 35 Ill. App. 626.

The testimony is of the nature, also, of self-serving declarations, and a party will not be allowed to thus manufacture testimony for himself. *Bagley* v. *Grand Lodge*, 131 Ill. 498.

No service is common that does not admit of a common participation, and no servants are fellow-servants when one is placed in control over the other. *Railway Co.* v. *Keary*, 3 Ohio St. 201; *Rindon* v. *Railway Co.* 5 Utah, 344; *Ryan* v. *Bagaley*, 50 Mich. 179; *Railway Co.* v. *Ross*, 112 U. S. 377; *Railroad Co.* v. *Herbert*, 116 id. 642.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

The first proposition submitted by counsel for the defendant is, that the declaration does not state a cause of action, and that its motion in arrest of judgment should have been sustained on that ground. The contention is, that the defendant, being a corporation, could act only by its agents and servants,

and that as the maxim *respondeat superior* has no application to injuries resulting from the negligent acts of the fellow servants of the plaintiff, the declaration must show affirmatively, by express averments, that the injury complained of was caused by the negligent acts of agents or servants of the defendant who were not fellow servants of the plaintiff. This, in our opinion, was not necessary. The allegations of the declaration, so far as this point is concerned, are in the form which has been universally recognized by the rules of common law pleading as sufficient to charge a corporation with negligence. They are that the defendant, that is, the corporation itself, negligently did the acts complained of, allegations which exclude, *ex vi termini,* the theory that they were performed by parties for whose conduct the defendant was not responsible.

Counsel refer in support of their contention to the recent case of *Joliet Steel Co.* v. *Shields,* 134 Ill. 209. Upon examination of that case it will be found that the negligent acts complained of were there affirmatively alleged to have been done by the defendant's servants, without showing that they were done by the class of servants whose acts would charge the principal with responsibility. It was held that such allegations were not sufficient to show a right to recover against the principal. The distinction between that case and this is clear. It should also be noticed that in that case, the ordinary presumptions which obtain after verdict, and by operation of which a defective statement of a good cause of action is said to be cured, were excluded by an instruction given by the court to the jury. In this case no such instruction was given, so that even if the declaration is one which might have been held to be defective on demurrer, the defect is one which is cured by verdict.

Counsel on both sides have filed in this court the same printed briefs and arguments prepared and used by them in the Appellate Court, and in which much space is devoted to the discussion of questions which are not open for considera-

tion here. Among other things, it is urged on behalf of the defendant that the evidence does not accord with the declaration, and that it does not sustain the verdict and judgment. These propositions present mere questions of fact, or at most mixed questions of law and fact, as to which the judgment of the Appellate Court is conclusive.

The point made that the evidence varies from the declaration, as we understand it, does not assume that there was no evidence tending to prove the allegations of the declaration as made, but that the negligence proved by the preponderance of the evidence differs in its character and circumstances from that alleged. The proposition stated in this form manifestly presents a mere question of fact which this court can not review. To present the question of variance as one of law, the evidence should have been objected to at the time it was offered on that ground, or when the variance became apparent, counsel should have moved to exclude the evidence, or in some other appropriate way, the question should have been so raised that the trial judge could have passed upon it, and to properly raise the question in any of these modes, the variance should have been distinctly pointed out, so as to enable the trial judge to pass upon it understandingly and to enable the plaintiff, if such course should become necessary, to obviate the objection by an amendment to the declaration. In none of these ways was the objection raised. It is true that one of the grounds assigned by the defendant in its motion for a new trial was in these words: "There is a variance between the declaration and the proof," but even there the variance was not pointed out. This was not sufficient. It was not incumbent upon the trial judge, upon such challenge, to grope through the record in an endeavor to discover a variance, but it was the duty of the defendant's counsel, if one existed, to point it out and call attention to it specifically, and having failed so to do, he must be deemed to have waived the objection.

The defendant called Morgenweck, its foreman, and Haddlesey, its time-keeper and paymaster, as witnesses, and sought to prove by them experiments with piles of barrels similar to the one from which the barrels fell upon the plaintiff, and from which a barrel located relatively the same as the empty barrel in question, was entirely taken out without causing the pile to fall. These witnesses were also asked whether an empty barrel located as was the one in question, could be taken out of the pile without causing it to fall or give way, or whether knocking out the head of the barrel thus situated and removing its contents would affect the stability of the pile. This evidence was excluded by the court, and an exception to such ruling was preserved by the defendant.

We are clearly of the opinion that experiments of that character, and their results, and inferences drawn from them by witnesses, were mere collateral matters which could have no legitimate bearing upon the issues before the jury. Besides the impossibility of showing that the conditions under which these experiments were made were in all respects identical with those existing at the time the plaintiff was injured, and the multitude of collateral issues which an attempt to prove identity of conditions would raise, the fact that one experiment had been conducted to a successful issue would have little if any tendency to show that in another case precisely like it, an accident might not happen. A thousand men may pass an impending wall with safety, or at least without injury, but the next man who attempts to pass it may be crushed by its fall. The question is not whether a pile of barrels might not stand with an empty barrel situated as was the one in this case, but whether leaving such barrel in the condition shown rendered the support of the barrels above it less secure, and that to such a degree as to constitute negligence, and whether the plaintiff's injury occurred as the result of such negligence.

So far as these witnesses were sought to be examined as experts, it does not appear that they had any special knowl-

edge or skill on the subject, unless it was that gained by means of the experiments which counsel attempted but was not permitted to prove. Nothing therefore is proved which tends to show that they were any better qualified to express an opinion on the subject than were any of the jurors before whom the cause was being tried. And even admitting that the subject was one for expert testimony—a proposition which may well be doubted—their answers to questions put to them calling for their opinions, would obviously have been merely a means of getting before the jury by indirection, the results of the experiments, if not the experiments themselves.

Numerous errors are assigned upon the rulings of the court in the instructions to the jury, only a portion of which, however, seem to us to be of sufficient importance to require extended discussion. The first instruction given at the instance of the plaintiff held, that if Morgenweck was in the defendant's employ, and authorized to take charge and control of a gang of men of whom the plaintiff was one in rolling and piling barrels of meat, and to govern and direct their movements in the branch of the defendant's business in which they were engaged, then, while acting in pursuance of and within the scope of such authority, he was the direct representative of the defendant, and his acts and directions, within the scope of his authority, were the acts and directions of the defendant; but if he was not so authorized, his acts and directions were not those of the defendant, and his negligence, if any, was not the negligence of the defendant.

This instruction does not attempt to lay down the law as to fellow servants, as counsel assume, but merely to state the rule governing the responsibility of a master for the acts and directions of a vice principal. It holds that one who has charge and control of other servants, and has authority to govern and direct their movements in the branch of the principal's business in which they are engaged, is, while acting in pursuance of and within the scope of *such authority*, a vice

principal, so as to make his acts and directions the acts and directions of the principal; but that if he has no such authority, his acts,.directions and negligences are not those of the principal. It must be admitted that the last part of the instruction is scarcely accurate as a general proposition, since many servants who have no control over other servants may so represent their principal as to render the latter responsible for their acts and negligences. Such would be the case with all servants not standing in the relation of fellow servants to the plaintiff, but in this respect the instruction is manifestly more favorable to the defendant than the law warrants, and is therefore no ground for just complaint on its part. In other respects the instruction seems to us to state the law correctly. It may be that some of the acts of Morgenweck, as shown by the evidence, were not within the scope of his authority over the other servants of the defendant, or that as to such acts he even assumed the position of a fellow servant with the complainant, but there is nothing in the instruction from which the jury could have been led to suppose that as to those acts, he was to be regarded as a vice principal, but rather the contrary.

Complaint is made of the plaintiff's fourth instruction, which was as follows:

"It was the duty of the defendant in this case to have used ordinary care and prudence in furnishing to the plaintiff, at the time of the accident, a reasonably safe place in which to work, and to have used all reasonable precautions to maintain and keep such place in a reasonably safe condition."

It is not claimed that this instruction does not state a correct proposition of law, but only that it is applicable to no issue in the case. In this we think the counsel are mistaken. The declaration avers that the plaintiff, at the time he was injured, was working for the defendant near the row of barrels in question, and that it was the defendant's duty to keep and maintain such row of barrels in such condition that they

would not spread, tilt or fall upon the plaintiff while working near the same, yet the defendant, in disregard of this duty, carelessly and negligently kept and maintained the row of barrels defectively piled, and when so piled, drove in the head of one of the barrels and removed the contents thereof, so that the barrel was greatly weakened and rendered unable to support the weight of the barrels piled above it, by means whereof the barrels spread, tilted and fell upon the plaintiff and injured him. The duty which is here alleged is the common law duty incumbent upon every employer, and which he can not delegate to others in such manner as to relieve himself from the consequences of its non-performance, to furnish to his employe a reasonably safe place in which to work, and to use proper diligence to keep such place in a reasonably safe condition, and the negligence charged is merely a breach of that duty. The failure of the defendant to keep the place assigned to the plaintiff for the performance of his work in a safe condition is of the very gist of the action, and we think therefore that the instruction above quoted was directly applicable to the main issue submitted by the pleadings.

The third instruction asked by the defendant was modified by the court by adding thereto the words in *italics,* and was given to the jury thus modified. That instruction was as follows:

"The jury are instructed that, where an employment is attended with danger, a servant engaging in it, assumes the hazard of ordinary perils which are incident to it, and if he receives an injury from an accident which is an ordinary peril of the service undertaken by him, he can not recover damages for the injury; *but this applies only to perils or risks ordinarily incident to the service, and not to those which are extraordinary and which did not exist at the time the servant engaged in the master's business, and which the servant did not subsequently assume.*"

Several other instructions asked by the defendant were modified in substantially the same way. We think there

was no error in the modification. The instruction, as asked, though announcing a proposition of law which is abstractly correct, yet, when applied to the facts of this case, was likely to mislead the jury. The material question in the case was not, whether the plaintiff had assumed the risk of other perils incident to the service in which he was engaged, but whether he had assumed the risk of the particular peril which caused his injury, viz., that arising from leaving an empty barrel of the character of the one in question, with the head knocked out, near the bottom of the pile, and thus weakening the pile and causing the barrels above it to fall. Other perils incident to the service were wholly immaterial. The instruction as asked then had no application to the case before the jury, except upon the assumption that the particular peril in question was one of the ordinary perils incident to the service, and standing alone, it would have been likely to convey that assumption to the jury. To render it applicable to the case, so as not to be misleading, it should have submitted to the jury the question whether that peril was, in point of fact, one of the ordinary perils of the service, and then laid down the rule applicable in case that question should be decided in the affirmative, or it should have been modified, as was done, so as to lay down the rule which should govern in case of its negative decision.

As to the remaining criticisms upon the rulings of the court in the instructions to the jury, all we need say is, that we have examined them all with care, and fail to find that in any of them any substantial error is pointed out. So far as we can see, no useful purpose would be subserved by prolonging this opinion in discussing them.

It is urged that the court erred in rendering judgment for $5000, after finding that the damages awarded by the jury were excessive, and requiring the plaintiff to remit $2500 from the amount awarded, under penalty of setting the verdict aside and granting a new trial. The practice of requiring

the plaintiff to remit a portion of his damages and rendering judgment for the residue, where there is no ground for a new trial except that the damages awarded by the jury are excessive, is so well established in this State that it can not now be successfully called in question.

We find no material error in the record, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*