### Illinois Steel Company v. Timothy Coffey.

1. PLEADING—*Where Declaration Sets Out Facts Showing That Negligent Servant Was Not a Fellow-Servant of Plaintiff, it Will Support a Recovery, Although Conclusion is Not Stated.*—Where in a case for personal injuries the declaration sets out facts showing that the negligent servant who caused the injury was not a fellow-servant of the plaintiff, it states a cause of action. It is never necessary to aver mere matters of conclusion.

2. MASTER AND SERVANT—*Whether Different Servants of the Same Master Are Fellow-Servants is a Question of Fact.*—Whether different servants of the same master are fellow-servants, within the legal signification of that term, is a question of fact to be determined by the jury from all the circumstances of each case.

3. SAME—*Fellow-Servants—A Question of Law and Fact.*—The definition of fellow-servants is a question of law. Whether a given case falls within that definition is a question of fact.

4. SAME—*Duty of Master to Furnish a Safe Place for Work.*—The duty of the master to use reasonable diligence in seeing that the place where the work of his servant is to be performed is safe for that purpose, extends not only to such risks as are known to him, but to such as he ought to know in the exercise of due diligence.

5. INSTRUCTIONS—*Estoppel of Defendant to Object to Failure to Give Written Instruction by Not Objecting to Oral Statement.*—Where the court at the instance of the defendant made an oral statement to the jury ruling out one count of the declaration, and defendant made no objection to the oral statement of the court at the time it was made, he is now estopped from taking any advantage of the failure of the court to hand down a written instruction at the beginning of his argument.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed April 28, 1903.

**Statement.**—This was an action on the case brought by Timothy Coffey against the Illinois Steel Company to

recover for personal injuries received by him.    The declaration consisted of three counts.    In the first count, the charge of negligence is that the employe who filled the tapping hole, did so negligently and improperly.    In the second count, the charge is that the hole as filled was unsafe and dangerous; that the defendant knew that it was unsafe, but that plaintiff was ordered to dig out the tapping hole. The third count of the declaration charges defendant with negligence in employing an incompetent man to fill the tapping hole.    The Illinois Steel Company was engaged in the manufacture of steel, etc., and in one of the departments of the mill was located the open hearth department, in which were located open hearth furnaces, one being known as number 5.    In this was melted iron into a liquid which becomes steel.    At one side of said furnace number 5, is a long neck or channel called a tapping hole through which the molten metal is drawn off.    Before the iron is put into said furnace to be melted, the tapping hole is tamped and stopped with magnesite, dolomite and loam, in order to prevent the liquid metal from coming out until ready to be drawn off through said tapping hole.    It is claimed that when said tapping hole is properly tamped, the melted metal can not penetrate through said filling.

Prior to and on the 29th day of December, 1899, Timothy Coffey, appellee, was employed as one of a night gang of men by the defendant as a second helper about said furnace.    When the molten metal was ready to be let out of the furnace, it was the duty of the second helper to dig the filling out of the tapping hole, and it likewise was his duty at the proper time to assist in filling the tapping hole; so it frequently happened that the tapping hole was filled by the day gang of men and left filled for the night gang, and *vice versa*, the gangs of men relieving each other at six o'clock.    It appears that the plaintiff was injured while opening this tapping hole which had been filled late in the afternoon by the day gang of men, and the complaint is that it was not properly filled, so that the metal came out sooner than plaintiff anticipated and plaintiff thereby was

burned and suffered impairment of his hearing. The case was submitted to a jury and resulted in a verdict for $3,000, upon which judgment was entered.

KEMPER K. KNAPP, attorney for appellant.

DAVID SULLIVAN, attorney for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Appellant insists that the first count of the declaration states no cause of action, because it fails to state that the plaintiff, and the servant of the defendant, whose negligence it is claimed caused the injury to the plaintiff, were not fellow-servants, or fails to state any facts tending to show that they were not fellow-servants. The negligence is charged in these words:

"But the defendant, by and through its agents and servants, so carelessly, negligently and improperly tamped, filled and stopped said neck or tapping hole of said furnace number 5 aforesaid, that the said molten metal penetrated and came through," etc.

The plaintiff charges that the defendant committed this act of negligence by its agents and servants. This count of the declaration does not state that the servant who filled the tapping hole was not a fellow-servant. Does it state facts from which the conclusion could reasonably be drawn that the negligent servant and plaintiff were not fellow-servants?

In Joliet Steel Company v. Shields, 134 Ill. 209, it is said:

"In all actions for negligence the burden is upon the plaintiff to allege and prove such negligent acts of the defendant as will entitle plaintiff to recover. The words 'defendant's servants' clearly include any and all of defendant's servants, and so, necessarily, it is not sufficient here merely to allege and prove an injury to the plaintiff from negligence of the defendant's servants generally, for it is just as consistent with that allegation that the defendant is free from liability as that it is liable."

It is necessary for the plaintiff to aver that the servant causing the injury is not his fellow-servant, or to aver facts

from which the conclusion can be drawn that he is not a fellow-servant. It is claimed that the Shields case has been to some extent modified. In Libby, McNeill & Libby v. Scherman, 146 Ill. 540, in commenting upon the Shields case, the court said:

" Upon examination of that case it will be found that the negligent acts complained of were there affirmatively alleged to have been done by the defendant's servants, without showing that they were done by the class of servants whose acts would charge the principal with responsibility."

But the court, apparently not satisfied with the sufficiency of the above reason, added:

" It should also be noticed that in the Shields case the ordinary presumptions which obtain after verdict, and by operation of which a defective statement is said to be cured, were excluded by an instruction given by the court to the jury."

In the Scherman case the allegations of the declaration were that the defendant, that is, the corporation itself, negligently did the acts complained of, allegations which exclude *ex vi termini* the theory that they were performed by parties for whose conduct the defendant was not responsible. In L. E. & St. L. R. R. Co. v. Hawthorn, 147 Ill. 226, the court said:

" In the Shields case the declaration failed to state the line of employment of the servants who negligently placed the iron mould which caused the injury. There was nothing in that declaration that they were not track repairers with the plaintiff and at the time working with him."

In the case at bar the plaintiff did not work on the same gang with the servant who negligently filled the tapping hole, nor did he work at the same time with him, for one worked while the other slept. It is not enough that the plaintiff and the negligent servant were employed by the same master and engaged in the same enterprise. If they were not associated together in the performance of their duties, or their employment did not require co-operation, or bring them together, " or into such relations that they could exercise an influence upon each other promotive of proper

caution," they were not fellow-servants within the rule which exempts the master from liability for injury to one servant through the negligence of another. The declaration states that the tapping hole was filled by a servant belonging to a gang of men entirely different from that to which the plaintiff belonged, and working at a different time and under circumstances which make it a matter of fact and not of law as to whether the plaintiff and the negligent servant were fellow-servants. It is true the declaration in the case at bar does not in so many words say that the plaintiff was not a fellow-servant of the negligent servant, but it does state facts when supplemented by the ordinary presumptions obtaining after verdict, which are equivalent to saying that they were not fellow-servants. In other words, we can not say, as a matter of law, that appellee and the servant who negligently filled the hole on the day previous to the accident, were fellow-servants. The facts showing the relation of the parties are stated in the declaration. It is never necessary to aver mere matters of conclusion. Taylor v. Felsing, 164 Ill. 331.

" Whether different servants of the same master are fellow-servants, within the legal signification of that term, is a question of fact to be determined by the jury from all the circumstances of each case." M. & O. R. R. Co v. Massey, 152 Ill. 144; L. E. & St. L. R. R. Co. v. Hawthorn, *supra;* C. & A. R. R. Co. v. House, 172 Ill. 601.

The definition of fellow-servants is a question of law. Whether a given case falls within that definition is a question of fact. C. & A. R. R. Co. v. Swan, 176 Ill. 424. The following language is found in the C. & A. R. R. Co. v. Swan, 70 Ill. App. 331 :

" The authority of the former case (Joliet Steel Co. v. Shields, 134 Ill. 209) is much diminished by what is said of it in Libby, McNeill & Libby v. Scherman, 146 Ill. 540. It is there held that the lack of the averment, if a defect, is cured by verdict."

In Cribben v. Callaghan, 136 Ill. 553, it is said:

" The ordinary presumptions which obtain after verdict, and by operation of which a defective statement of a good

cause of action is said to be cured, may sometimes be excluded by the character of the instructions given."

To support this latter proposition, the court cites the Shields case, indicating a disposition to place the decision of that case upon the ruling of the court upon the giving of certain instructions, and further indicating that in the absence of such instruction the presumptions sufficient to sustain the verdict in that case would have been indulged.

It is next contended by appellant that the evidence shows that the act complained of as negligence was the act of a fellow-servant. Appellee claims that while he was attempting to open the tapping hole he was burned, because the tapping hole had not been properly filled. The tapping hole had been filled by a man on the day gang, the day before it was opened by the plaintiff. The question is whether this man and the plaintiff were fellow-servants. Under proper instructions of law giving the definition of fellow-servant it was for the jury in this case to determine from the evidence whether they were fellow-servants. Upon the request of the company, the court did instruct the jury as to who are fellow-servants, in the following language:

" The jury are instructed that where two servants of the same master are co-operating with each other in a particular business in the same line of employment, or their duties are such as to bring them into habitual association, so that they may exercise a mutual influence upon each other, promotive of proper precaution, they are known in the law as fellow-servants or co-employes. And if the jury believe from the evidence in this case that the plaintiff and George Swick were fellow-servants, according to the above definition, then the jury are further instructed that there can be no recovery in this case, even though they believe that the said George Swick was guilty of negligence which caused the injury to the plaintiff."

Under this instruction the jury found against the defendant. If there is sufficient evidence with all its legal intendments to warrant the finding of the jury as to the facts, we are not at liberty to disturb their verdict. The filling of the hole by George Swick was not done in the presence of appellee, nor were the contents of the hole exposed so that

they could be seen and examined by appellee and the negligent acts of George Swick in filling the same guarded against, or their consequences even anticipated. It can not be said, as a matter of law, that the work of George Swick, done the day before the accident, and considering its hidden character, that it was of such nature that the plaintiff could have exercised an influence promotive of proper caution upon the said Swick. After reviewing the evidence with all the surrounding circumstances appearing in the record, we can not say, as a matter of law, that said Swick and the plaintiff were fellow-servants. Appellant next contends that even if the plaintiff and George Swick were not fellow-servants, still said Swick was not guilty of any negligence in filling the tapping hole. The tapping hole when first prepared is about three and one-half feet long. The hole is filled as follows: From four to six inches of magnesite at the inner end and then two or more feet of dolomite are packed into the hole and into the outer end a long plug is placed. The dolomite must be fine-screened before being put into the hole to keep the metal from leaking through. It is claimed that molten metal will come through the rough dolomite. The evidence tends to show that when the hole was properly filled, the helper in digging it out must dig into it about three feet before coming to the magnesite and that it is safe to dig in that distance. The plaintiff testified that during all the time he worked at the furnace he did dig in that distance. Now it appears that Swick when he put in the filling which caused the accident, put in from fourteen to eighteen inches of dolomite. He testified:

"I had been doing second helper's work for about a week up to that time. I was eighteen years of age then. I used part of the sifted dolomite, and I took maybe a shovel full and a half or two shovels full of rough stuff and shoved it in back. The coarse stuff was about as big as the end of my thumb. I did not use the stuff at other times, but I seen other fellows doing it. I learned how to fill the hole right in that time."

The evidence certainly tends to prove negligence on the

part of Swick in filling the hole at the time in question, and the serious accident resulting therefrom can leave no doubt in the mind of any one that Swick was careless and that the hole was not properly filled.

The evidence shows that the flame and gas burst out almost at the beginning of plaintiff's work in opening the hole, and long before his experience had taught him there was any occasion to expect the coming of the molten steel.

It is claimed by appellee that there is no evidence tending to show that Swick put in the magnesite, and that he did not clean out the tapping hole before filling it. It is further averred that not only Swick, but his foreman, and consequently the defendant, were negligent in filling the hole, and that the defendant knew, or ought to have known, that the hole when filled was in a dangerous condition. But these matters were all for the determination of the jury. It is a well recognized rule that "the duty of the master to use reasonable diligence in seeing that the place where the work of his servant is to be performed is safe for that purpose, extends not only to such risks as are known to him, but to such as he ought to know in the exercise of due diligence." Illinois Steel Co. v. Schymanowski, 162 Ill. 456; C. C. Co. v. Haenni, 146 Ill. 614; Libby, McNeill & Libby v. Scherman, 146 Ill. 540.

In carefully prepared instructions presented by appellant, the court gave the jury the law applicable to the case, and it was for the jury to weigh the evidence.

Believing, as we do, that there was evidence before the jury, under the first and second counts, sufficient to sustain their verdict, we shall not disturb the same.

It is claimed by the appellant that the court erred in instructing the jury orally. The plaintiff attempted to claim, under the third count of the declaration, on the ground that the employe of the plaintiff who caused his injury was an incompetent and unfit person for the work he was engaged to do.

At the close of all the evidence in the case, the defendant moved the court to direct a verdict for the defendant

under the third count. Thereupon, the court announced orally that he did not care to hear further argument, and that, in his opinion, the evidence in the case was not sufficient to make out a case under the third count of the declaration. And counsel for defendant presented to the court the following instruction:

"The jury are instructed to find the defendant, The Illinois Coal Company, not guilty under the third count of the declaration herein."

Counsel for plaintiff, in his closing argument, and after the court had openly announced that there was not evidence sufficient to sustain the third count, used the following language:

"The company had a first helper over that man. He could tell you the secret of this case, whether that young man was really and totally unfit at that time and that night—"

Counsel for defendant here interrupted and said:

"I object to that line of argument. That point in the case has already been ruled out. He is arguing that the man was an incompetent man. There is no charge of that in this case now."

After the close of the argument of appellee's counsel, the counsel in behalf of appellant stated that before commencing his argument to the jury he desired to know definitely what was the court's ruling upon the instruction which he had presented. Thereupon the court stated orally to the jury that the plaintiff had failed to make out his case under or as stated in the third count of his declaration. Having obtained this instruction from the court for the convenience and guidance of appellant's counsel, he proceeded, without objection to the court's oral statement, with his argument, and said to the jury:

"When Mr. Sullivan opened the case to you, one of the charges that he made against us was, that we put to work a man that was incompetent. I want to say to you that that charge is now out of the case. The court will instruct you that there is no such charge as that in the case. In other words, the presumption of the law is that Mr. Swick is a competent man."

Mr. Sullivan objected. The court then said, " That isn't in any count here now." Mr. Sullivan then stated, " The court has ruled out the third count of my declaration."

There is no question that the court distinctly ruled, in the presence of the jury, that the third count was out of the case, and that no evidence under it need be argued, and the position of the court was stated and restated by both counsel in their final arguments to the jury, and the court made a similar statement several times, so that there can be no doubt that the third count was effectually excluded from the consideration of the jury. Counsel for appellant has shown no way in which his client was injured by the failure of the court to give the instruction in writing, except that he states that he told the jury that the court would so instruct them, but upon examining his argument, it will be found he uses the following language :

" The court will instruct you that there is no such charge as that in the case. In other words, the presumption of law is that Mr. Swick was a competent man."

He did not correctly expound the substance of the third count, and we think, in view of the insistance of counsel for appellant, that the court state his position as to whether the third count should be considered a part of the case before entering upon his argument; and in view of the fact that he made no objection to the oral statement of the court at the time it was made, that appellant is now estopped from taking any advantage of the failure of the court to hand down a written instruction at the beginning of his argument.

It was further contended that the verdict was excessive. The jury has assessed the damages for the burning of plaintiff, the impairment of his hearing and the physical pain and suffering to which he has been subjected. We find no reason in the record to believe that the jury were swayed by passion or prejudice in fixing the amount of their verdict.

After a careful review of this entire record, and the law of the case, we are of the opinion that the judgment of the Circuit Court should be affirmed.