THOMAS McINERNEY, Admr., Defendant in Error, *vs.* WESTERN PACKING AND PROVISION COMPANY, Plaintiff in Error.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. NEGLIGENCE—*when declaration need not negative relation of fellow-servants.* In a damage suit against a corporation by the administrator of a deceased servant whose duty it was to remove ashes from a boiler pit and whose death is alleged to have been caused by the bursting of a boiler flue which the defendant, in violation of its duty, "by and through certain of its servants," negligently permitted to become unsafe, it is not necessary to allege that the servants mentioned were not fellow-servants of the decedent. (*Joliet Steel Co.* v. *Shields,* 134 Ill. 209, and *Schillinger Bros. Co.* v. *Smith,* 225 id. 74, distinguished.)

2. SAME—*when it cannot be said that defendant was not negligent.* Where there is evidence tending to show that the bursting of the boiler flue which caused the death of the plaintiff's intestate was due to a thin place in the flue which might have been discovered by the hammer test and that the defective flue was one of the front row of vertical flues, it cannot be said that the defendant was not negligent in failing to discover the defect, though it used hydraulic and hammer tests at intervals during the year and a half the boiler was in use but had made no test at all for two months before the accident.

3. Pleading—*when demurrer is properly sustained to plea of Statute of Limitations.* A demurrer to a plea of the Statute of Limitations, filed to an amended count of a declaration, is properly sustained where the original count states a cause of action, and the amended count, even though it uses different language and goes more into detail, does not charge a different one.

4. Appeals and errors—*action of counsel in asking improper question will not necessarily reverse.* The action of counsel in repeating a question to a witness after the court had ruled it to be improper does not necessarily require a reversal, particularly where the court reprimanded counsel in the presence of the jury and struck the question and answer from the record.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. George W. Patton, Judge, presiding.

E. E. Gray, F. J. Canty, and J. C. M. Clow, for plaintiff in error.

Thomas J. Healy, and John A. Bloomingston, for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

This action was brought by defendant in error, against plaintiff in error, for damages for negligently causing the death of defendant in error's intestate.

William Lawler was a common laborer in the employ of plaintiff in error, and at and for some time before his death was engaged in removing ashes from the pit underneath the boilers owned and operated by plaintiff in error day and night in its business of slaughtering cattle. Lawler worked at night. To do his work he was required to descend into the pit by means of a movable ladder, and the ladder was then taken up out of the pit while he was throwing the ashes out. After throwing the ashes out of the pit the ladder would be placed in it and he would come out of

the pit and wheel the ashes away. Early in the morning of September 7, 1906, while in the pit, a tube in the boiler above him burst, and before he could be removed from the pit he was so injured by steam and hot water escaping from the boiler on account of the tube bursting, that he died the same day.

The case was submitted to the jury under the first count of the original declaration and the first of two additional counts filed by leave of court December 16, 1907. The first original count, after proper inducement, alleged: "And it then and there became and was the duty of the defendant to keep the said boiler flues in a reasonably safe condition to prevent same from bursting and thereby to injure or kill persons who might be near to or in the vicinity of same, yet the defendant did not regard its duty in this behalf, but, on the contrary, by and through certain of its servants negligently, wrongfully and carelessly caused or permitted the said boiler and flues to become unsafe." The first additional count filed December 16, 1907, charged that "while the plaintiff's intestate was, in the exercise of due care and caution for his own safety, working in the then certain pit in front of the fire-box of said boiler, the defendant negligently and carelessly suffered and permitted a certain then flue to be and become defective, in this, to-wit, that the said flue at a certain portion thereof was negligently suffered and permitted to become thin and much thinner than other portions of the said flue and much thinner than was usual and customary in such flues, all of which the defendant well knew or in the exercise of reasonable inspection could have known and of which plaintiff's intestate was ignorant and had no opportunity of knowing, so that by reason of the negligence of the said defendant, as aforesaid, in furnishing said flue which was then and there defective, as aforementioned, said flue, by reason of said defect mentioned, then and there exploded, ruptured and blew out."

Defendant pleaded the general issue only to the original declaration. To the additional count filed December 16, 1907, in addition to the general issue it pleaded the Statute of Limitations. The court sustained a demurrer to the plea of the Statute of Limitations. At the close of the evidence for the plaintiff below defendant moved the court to direct a verdict in its favor, but the motion was denied. It was renewed at the close of all the evidence and again denied, and proper exceptions were preserved to the rulings of the court. The jury returned a verdict in favor of plaintiff for $7500, upon which the court rendered judgment, and defendant appealed to the Appellate Court for the First District. That court affirmed the judgment of the trial court, and on the petition of defendant the case is brought to this court by writ of *certiorari.*

It is insisted that because the original count of the declaration alleges that the defendant, by and through its servants, negligently, wrongfully and carelessly caused or permitted the boiler and flues to become unsafe, etc., and failed to allege that the servants referred to were not fellow-servants of the deceased, said count states no cause of action and the Statute of Limitations was a good plea to the second count. The first count does not come within the rule announced in *Joliet Steel Co.* v. *Shields,* 134 Ill. 209, and *Schillinger Bros. Co.* v. *Smith,* 225 id. 74, as contended by plaintiff in error. In the first mentioned case the plaintiff was a track repairer, and the declaration alleged he was injured by the negligence of other servants of the defendant in placing an iron mould in an insecure and dangerous position near the track. There was nothing in the declaration to show that the servants whose negligence caused the injury were not also track repairers with the plaintiff and his fellow-servants. In the *Schillinger Bros. Co. case* one count of the declaration alleged that plaintiff's injury resulted from the negligent overloading of a scaffold by ser-

vants, agents and employees of the defendant, without also alleging that said servants, agents and employees were not fellow-servants of the plaintiff. In the case before us the count in question charges that it was the duty of defendant to keep its boiler and flues in a reasonably safe condition so as to prevent them from bursting and injuring or killing persons employed in their vicinity, but that the defendant did not regard its duty in that behalf, but, on the contrary, through certain of its servants negligently, wrongfully and carelessly permitted the boilers and flues to become unsafe. The negligence charged was that of the defendant, which, being a corporation, of course acted through its agents and servants. The declaration alleges Lawler's duty was to take ashes out of the pit underneath the boiler, and it was not necessary to the statement of a cause of action to allege that those who were charged with the duty of caring for and maintaining the boiler and flues in a safe condition were not fellow-servants of the deceased. (*Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540.) It does not appear from the averments of the count that Lawler had any association or connection with the agents or servants of the defendant in charge of the boiler or that he had anything whatever to do with the boiler or flues. The additional count did not state a new cause of action and the Statute of Limitations was not a good plea to it.

It is also contended that there was no proof to sustain the allegation of negligence of the defendant, and that the court erred in not directing a verdict in its favor. An examination of this assignment of error has required us to look into the evidence for the purpose of determining whether there was any testimony fairly tending to prove the charge of negligence.

The boiler was what is known as a Sterling boiler, and it is not disputed that it was a standard make of boiler and one of the best on the market. It was put in operation in the latter part of March or early in April, 1906, and before

the brickwork was placed around it was subjected to a water pressure, called the hydraulic test, of 225 pounds to the square inch. This, competent witnesses testified, indicated a steam capacity of 150 pounds to the square inch. The test disclosed no defects. The hydraulic test is the one generally, if not universally, used by manufacturers to ascertain if there are any defects in the boilers and flues. Another test is made by tapping the boilers and flues with a hammer. The ring of the metal under the hammer will disclose defects to the experienced ear. About 1 :30 o'clock in the morning of September 7, 1906, while Lawler was in the ash-pit of the boiler one of its flues burst from pressure and let hot water and steam into the pit and onto Lawler in such quantities as to injure him so that he died a few hours later. The rent made in the flue was eight or nine inches long, and measurements show that at the point where it burst it was one-thirty-second of an inch thick. The flues were made of milled steel and were seamless, and as manufactured were intended and supposed to be one-eighth of an inch in thickness. Their diameters were three and a half inches.

Whether the thin place in the flue existed when the boiler was installed or whether it became thin afterwards is not disclosed by the evidence, unless it be said that the hydraulic tests to which it was subjected show that the defect did not exist at that time. It is not claimed that the hydraulic test will disclose a thin place in a flue unless the metal is so thin that it will give way under the pressure when it is being applied. For detecting defects in flues which do not leak, such as a thin place, the hammer is more reliable than the hydraulic test according to the testimony of a number of witnesses. It is not disputed that the boiler was kept in first-class condition and its flues free from scale. It was washed and cleansed every three weeks, and when the flue burst it was clean and free from sediment and scale. Under this condition the flue is supposed to be

constantly full of water and is not affected by heat and fire coming in contact with it. The proof shows that in the absence of water in the flue, or where scale is permitted to form so as to keep the water away from the metal, fire will very quickly burn and injure the flue. There is no proof that anything of that kind occurred to cause the flue to burst. On the contrary, the testimony tends to negative the idea that the flue may have burned out just at the time it gave way, for all the testimony shows that it was perfectly clean and free from scale. At the time the flue burst but seventy-five pounds of steam was carried. We have, then, the incontrovertible fact that the flue burst as a result of being thin and defective. All the witnesses of experience in such matters testified that with the flues kept in the condition these were shown by the evidence to have been kept, use during the time the boiler was operated would not wear them to any perceptible degree. Under the evidence we could not say that the defect was caused by heat immediately preceding the bursting of the flue. One witness on behalf of plaintiff in error testified he believed there are times when steam is developed so fast that it lifts the water out for a short time and makes a pocket an inch or two long in the tube, but that this would quickly pass and the tube fill with water. The same witness testified that the tube would not burn so long as the water would lie against the metal, and that if the tube had not been burned out he would say that the thin place in it must have been there for some time. The plaintiff in error proved that in December, 1905, while the boiler was being made ready for use and before it was bricked in, it was subjected to the water test of 225 pounds to the square inch and no defects were disclosed at that time. John C. Delaney, chief engineer of the plaintiff in error, testified he inspected the boilers in March, 1906, using the hammer test, before they were started up. He also made water tests after the boilers were started up, the last one some time in July. E. J. Kearnan testified he

was working for the company that manufactured the boilers, in the fall of 1905. He either superintended or assisted in superintending a water test in October or November, 1905, when a pressure of 225 pounds to the square inch was applied. This, as we understand it, is probably the same test the witness before referred to testified about. Kearnan testified the manufacturers did not use the hammer test either before or after the boilers left the shop; that the hydraulic test was the best and the one generally used. He also testified the hydraulic test would not always disclose whether a tube is thinner at one point than another; that where a tube is normally one-eighth of an inch thick and has a thin place one-thirty-second of an inch thick, by striking within three or four inches of the thin spot with a hammer it would always be disclosed. Thomas Conroy, an inspector for the city of Chicago, inspected the boiler in question, using the hammer test, some time in February, 1906, and found no flaws in it. John Shea,.an inspector employed by the Hartford Steam Boiler and Inspection Insurance Company, testified he inspected the boiler, using the hammer test, in May, 1906. This was the last test shown by the proof to have been made with the hammer, and the last test made with water shown by the proof was in July. The proof shows that the flues in the boiler were vertical and that the one that burst was in the front row, where the hammer test could easily have been applied. We cannot say that, as a matter of law, the plaintiff in error was not guilty of negligence in failing to test the flue, either by water pressure or with the hammer, for a period of about two months before the accident occurred, nor can we say that if proper tests had been made the defect could not have been discovered. There is proof tending to show that if the hammer test had been applied when the defect existed it would have been discovered. Nor can we say that because the defect was not discovered before the break occurred it did not exist before that time.

We would not be justified, under the state of the proof, in saying that the court erred in refusing to direct a verdict in favor of plaintiff in error and in submitting the case to the jury. The weight and sufficiency of the evidence are not open for our consideration.

We do not think there was any question of fellow-servant involved under the proof, and the court did not err in refusing to instruct the jury on that subject.

Complaint is made of the conduct of counsel for defendant in error during the trial of the case in the superior court. Conroy, who had been a boiler inspector for the city of Chicago when he inspected the boiler in question, testified, on cross-examination, that he had resigned his position. He was then asked if he had resigned or had been "fired," and an objection to this question was sustained. Counsel then asked if it was not a fact that the witness had been "fired" because of drink, and the witness replied that it was not,—that he had resigned. Counsel for plaintiff in error again objected, and the court admonished counsel for defendant in error that he must respect the ruling of the court, and said such testimony was not competent in any manner, shape or form, and on motion of counsel for plaintiff in error the question and answer were stricken out. We see no justification for the question asked by counsel and he should not have asked it, but it was not such a flagrant violation of the proprieties and calculated to prejudice plaintiff in error's case to such a degree that we would feel justified in reversing the judgment solely on that account. The court applied the proper corrective in reprimanding and admonishing counsel in the presence of the jury and striking the question and answer from the record.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*