# E. VAN WINKLE GIN & MACHINE CO. v. BROOKS.

No. 913.    Opinion Filed July 11, 1911.

(116 Pac. 908.)

1. **MASTER AND SERVANT** — Injury to Servant — "Fellow Servant"—"Vice Principal"—Foremen—Acts.    In order to constitute a foreman or boss of a gang of laborers employed by a corporation in the construction of a water tank in connection with an oil mill a "vice principal," for whose negligence in the management of that part of the work the corporation will be liable for personal injuries to any of those employed under him and who were subject to his discretion and control, the master must confer upon such boss or foreman the entire and absolute management of the entire department, retaining no oversight and exercising no discretion of its own as to the conduct of such department, except that it is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe materials to work on, and safe fellow servants and coemployees, and, if the work is such as to require it, to require safe and proper rules and regulations for conducting the same.    Negligence in the performance of any of these positive duties will render the master liable without regard to the standing or authority of the employee through whose fault the injury is occasioned.    If the injury is not the result of an omission to perform one of these positive duties of the master, but is occasioned by the negligence of such foreman, such foreman will be deemed a "fellow servant" with the person injured, even though he has power to oversee the men and direct the work directly under his charge, unless his authority in his department is entire and absolute.    If he is subject to the control of one or more over him in the management of his department, he is a fellow servant with those under him.

2. **SAME**—Warning Servant—Incidental Dangers.    Where a corporation uses reasonable effort and precaution to furnish a safe place for its servant to work, and fit and proper tools and appliances to work with, and reasonable care is taken to provide competent coemployees, it is under no duty to notify such servant of transitory dangers arising out of the performance of mere detail of the work, which may be caused by acts of a fellow workman.

(Syllabus by the Court.)

Dunn, J., dissenting.

*Error from District Court, Comanche County; J. T. Johnson,*

*Judge.*

Action by James M. Brooks against the E. Van Winkle Gin

& Machine Company. Judgment for plaintiff, and defendant brings error. Reversed, and a new trial ordered.

*McElhoes, Ferris & Rhinefort,* for plaintiff in error.

*J. B. Phillips* and *Stevens & Myers,* for defendant in error.

KANE, J. This was an action to recover damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, prior to statehood. For convenience the parties hereafter will be called plaintiff and defendant, respectively. It seems that the defendant, a Georgia corporation, undertook to furnish the labor and material and to construct an oil mill at the city of Lawton; that in pursuance of said undertaking it employed the plaintiff to work on and about said oil mill as a common laborer; that at the time of the injury the plaintiff was working under the immediate superintendence of one Capt. Lewis, who, it was alleged, was a vice principal of the defendant, and was engaged in the erection of a water tank which was included in the general undertaking of the defendant; that the tower supporting the tank was being erected in sections, each section being about 12 feet in length; that the first, second, and third sections had been erected and sections of a ladder were fastened to the first two sections of the tower by bolts in the ordinary way, when Lewis ordered the plaintiff to descend to the ground and assist another workman who was ready there to hoist the third section of the ladder to its proper place on the tower for the purpose of fastening it above the sections that had been put in place and bolted to the tower. The specific acts of negligence complained of are stated in the petition as follows:

"That after this plaintiff had gone to the ground as aforesaid, the defendant, by and through the direction and order of its vice superintendent, then in charge of said work, knowingly, wilfully and negligently, and without care or caution on their part, removed the stay bolts which had been placed in position to, and which did in fact hold the upper end of the said section of the said ladder, and did by the removal of the stay bolts aforesaid render the ladder aforesaid unsafe, hazardous, and dangerous; that the defendant, well knowing that the said ladder was

dangerous and unsafe, and well knowing that its then condition was wholly unknown to plaintiff, did, negligently, willfully, wantonly, and knowingly, without the exercise of reasonable care and caution, fail to notify this plaintiff that the stay bolts aforesaid had been removed, and did wantonly, knowingly, negligently, and without the exercise of reasonable care and diligence permit the plaintiff to attempt to return to his work upon the aforesaid scaffold over the iron ladder aforesaid."

The answer put in issue all the allegations of the petition, except the fact of incorporation, and further invoked the doctrine of fellow servants and assumption of risk.

Upon trial to a jury, there was a verdict for the plaintiff in the sum of $8,500, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

On the question of "fellow servants," the evidence shows that John William Taylor was the general western manager for the defendant, and had general charge of the erection of the mill, with full power to furnish instrumentalities, and was present in person on the morning of the injury; that G. L. Blanchard was next in authority, and next to him. One McDonald had charge of all the mechanical work. The workmen were organized into gangs or crews, each crew being in direct charge of a foreman or boss, who worked with the men; Lewis being foreman or boss of the gang to which the plaintiff belonged. Mr. Blanchard employed the plaintiff and had charge of the construction of the water tank for about a half-hour after they started to work upon it, whereupon, according to the testimony of the plaintiff, "Mr. McDonald brought Mr. Lewis out and introduced him to Mr. Blanchard, and told Mr. Blanchard that Lewis would take charge and build that tower. Blanchard then turned the bunch of us—five of us—and the tower over to Lewis, and Mike Bell went back to the engine rock, and Blanchard went on about his business." All of these bosses or foremen were subject to the control of the above-named officers who ranked in authority in the order named above. The defendant contends that the plaintiff and Capt. Lewis were fellow servants, and that, as there were no allegations that defective instrumentalities were furnished, that said tower was not being erected in the most approved, mod-

ern and scientific manner, or that Lewis was not a thoroughly competent man to perform the duties for which he was employed, his failure to warn the plaintiff of the removal of the bolts, admitting that was negligence, cannot be charged against the defendant—whilst the plaintiff contends that it was the duty of the master to warn its employees of dangers arising during the progress of the work which were known to it, but unknown to the employee; that this duty arises out of the obligation to furnish the employee a reasonably safe place to work, and to use reasonable care to keep it in a safe condition. Boiled down to its last analysis, then, the question is whether the negligence charged is the neglect of a primary and absolute duty of the master to the servant. The distinction between negligence that is to be imputed to the master and that which is to be considered as the negligence of a fellow servant is clearly drawn by Mr. Justice Brewer in *Baltimore & O. Ry. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, who, after a full discussion of the subject, draws the following deductions:

"Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor. But, it may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is as fully discharged, when reasonable precautions have been taken to place fit and competent persons in charge. Neither duty carries with it an absolute guaranty. Each is satisfied with reasonable effort and precaution."

If we keep in mind the conclusions reached by Justice Brewer, and particularly that the question of liability turns rather on the character of the act than the relations of the employees to each other, we will have no difficulty in placing this cause in the

class to which it belongs. The duty to instruct and warn servants, especially where they are youthful or inexperienced, and the work is dangerous, as to permanent or constantly recurring dangers, is generally held to be nondelegable, and an employee upon whom the duty is imposed is not a fellow servant, whilst the duty to instruct and warn as to dangers arising from the execution of the general details of the work is held to pertain to the duties of the servants as between themselves, so that a failure or negligence in regard thereto is that of a fellow servant, exempting the master from liability. 26 Cyc. 1337. In the case at bar, removing the bolts was undoubtedly a mere detail of the work in hand.

A great many cases have been cited by counsel for both plaintiff and defendant in support of their respective contentions, most of which have been examined by the court. The following, we think, are in point, both as to identity of facts and principles involved, and, as they satisfactorily state the rule which we think should govern herein, we have selected them as a basis for our conclusions.

In *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 422, 79 Pac. 260, it was held that:

"In order to constitute a manager or superintendent of a manufacturing plant a vice principal, for whose negligence in the management thereof the master will be liable for personal injury to any of those employed under him and who are subject to his direction and control, the master must confer upon such manager or superintendent the entire and absolute management of the entire business, or of an entire department thereof, retaining no oversight and exercising no discretion of his own as to the conduct of such business, except that it is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe material to work on, and safe fellow servants or coemployees and, if the business is such as to require it, to provide safe and proper rules and regulations for the conducting of the same. Negligence in the performance of any of these positive duties will render the master liable without regard to the standing or authority of the employee through whose fault the injury is occasioned. If the injury is not the result of an omission to per-

form one of these positive duties of the master, but is occasioned by the negligence of one in charge of the manufacturing part of the plant, such an one will be deemed a fellow servant with the person injured, even though he has power to employ and discharge hands, and to oversee the men, and direct the work, unless his authority in his department is entire and absolute. If he is subject to the control of one over him in the management of his department, he is a fellow servant with those under him."

In that case Cahill was employed by the Ruemmeli-Braun Company in its ice plant as an oiler and wiper, and to do generally whatever he might be ordered to do by the chief engineer. While so employed he was directed to make a certain steam pipe connection in the engine room, at a point some 16 feet above the floor, and for this purpose he got a ladder, and he and the chief engineer placed it in position. He ascended the ladder and began making the connection. After he had worked a short time, he says the ladder slipped a little, and the chief engineer, who was standing at the bottom of the ladder, placed his foot against it, which rendered Cahill's position safe, and he then resumed his work. The engineer, without notice to Cahill, walked away, and the ladder fell, inflicting injury complained of. We think the case at bar belongs to that class of cases. In principle, it is difficult to distinguish it from the Cahill case, *supra*. In the case at bar, the uncontradicted evidence shows that the removal of the bolts which fastened the second section of the ladder to the tower was a necessary incident to attaching the third section, which the defendant descended to assist in hoisting. So that the negligence, if there was any, consisted wholly in failing to notify the plaintiff that the stay bolts had been removed between the time he descended and his attempt to return. In the Cahill case the foreman failed to give notice that he had removed his foot; in this case the foreman failed to give notice that he had removed the bolts. Speaking of the situation in the Cahill case, Mr. Justice Burwell, who delivered the opinion for the court, said:

"If Lindeman was a fellow servant (which we will consider later) and was guilty of negligence, the plaintiff has neither pleaded nor proved that the master did not use reasonable care

and diligence in employing him, and the contention of appellee that he was not furnished a safe place in which to work is without merit. * * * It is true that the place where Cahill was doing the work was not absolutely safe, because the ladder fell and he was hurt; neither is one who is engaged in painting a church steeple, or the upper stories of a high building from a swinging scaffold working in a safe place; but if there are no hidden or unusual dangers, the workman has a safe place within the meaning of the law, and the dangers in such case are only those which he contracted to assume. *Martin v. A., T. & S. F. R. R.*, 166 U. S. 399 [17 Sup. Ct. 603, 41 L. Ed. 1051]. The place where Cahill was working was rendered unsafe only because of the negligent use, by ordinary fellow servants, of safe appliances furnished by the master. This did not constitute an unsafe place under the law. If the appellee were entitled to recover at all, it would be by reason of the conduct of Lindeman in walking away from the ladder, and even then the court would have to find that Lindeman was a vice principal, for it will not be contended that Cahill can recover for the negligence of a fellow servant, and, as indicated before, Lindeman was a fellow servant of Cahill's."

The rule laid down in the Cahill case was followed in *Mollhoff v. C., R. I. & P. Ry. Co.*, 15 Okla. 540, 82 Pac. 733, wherein it was held that:

"The law presumes that all persons engaged in the common employment of the same master, though different in rank, are fellow servants, and the burden is on him who claims damages for an injury caused by the negligence of one employed by the same master to show that his coemployee is a vice principal and stands in the place of the master."

In *Curran v. Manhattan Ry. Co.*, 118 App. Div. 347, 103 N. Y. Supp. 351, the plaintiff was a track repairer in the employ of the defendant, and his duties required him to work on its elevated structure, around and between the railway tracks upon which trains were operated. In charge of the gang with which plaintiff was working was a boss or foreman named McEwen, and a part of his prescribed duties was to warn the workmen, when on the track, of approaching trains. At the time of the accident the foreman was temporarily absent from the place where plaintiff was working, and no warning was given plaintiff by him, and he was struck by a passing train, while at work,

and received injuries for which he complains. It was held that:

"In an action against a railroad company for injuries to a servant by negligence of defendant's foreman in not warning workmen of approaching trains, an instruction taking from the jury all questions respecting defendant's negligence except that of the foreman, and charging that he stood in the place of the master, was erroneous, where no question was raised as to the competency of the foreman to perform his duties, as the warning of approaching danger was a mere detail of the work, for negligence in the performance of which resulting in injuries to an employee, the master was not liable at common law."

In *Miller v. American Bridge Company*, 216 Pa. 559, 65 Atl. 1109, plaintiff was a carpenter in the employ of the defendant, and at the time of the accident which gave rise to the suit was working on a bridge across the Ohio river, a short distance below the city of Pittsburg, known as the "Ohio Connecting Bridge." His immediate superior was a man by the name of Ward, who had charge of the work on the ground, had power to hire and discharge the men employed upon this work and give the directions to the men employed in the prosecution of the work. The bridge was practically finished, and the roadway of the bridge was about 25 feet above the top of the stone piers. On the day in question the plaintiff was directed by Ward to go down to the top of the stone pier and receive and put in place timbers which would be lowered to him through an opening made in the floor of the bridge. The timber was brought to the opening in the bridge by two workmen; Ward tied the rope around the timber, and, wrapping the slack end of the rope around an iron upright of the bridge, lowered the timber into position on the top of the stone pier. When the third piece of timber was being lowered the rope became untied, the timber in falling struck the plaintiff and knocked him off the pier into the river, by which he was injured and for which injury he brought suit against his employer. The plaintiff in his testimony stated that, immediately prior to being sent down there by Ward, Ward stated to him that he would warn him each time he was about to lower the piece of timber, and that when the first two pieces were lowered he did so warn him that he might get out of the way, but

failed to warn him when lowering the piece which struck him and knocked him off into the river. It was held that:

"Where an employer has furnished a safe place for employees to work, he is under no duty to give notice of transitory dangers caused by acts of fellow servants."

*Martin v. A., T. & S. F. Ry. Co., supra,* was an action by the plaintiff to recover damages for injuries sustained by him by being run over by a train on a railroad belonging to the defendant, near Albuquerque, N. M. The case was tried before a jury in the district court, and resulted in a verdict for the plaintiff in the sum of $8,000. Judgment having been entered, the railroad company took the case by writ of error to the Supreme Court of the territory, which court reversed the judgment, and directed judgment for the railroad company, and for costs against the plaintiff, who thereupon sued out a writ of error from the Supreme Court of the United States. On the trial evidence was given showing that the plaintiff had been employed by the railroad company at Albuquerque, N. M., as a common laborer; that he was under the orders of the section foreman, and was to do what the foreman told him. The section foreman was employed by the roadmaster, and the foreman employed the men. The roadmaster directed the section foreman what work to do and where to do it. He laid out the work for them and told them what to do. The section foreman employed the men and saw that they did the work properly. If the foreman thought a man ought to be discharged, he would see the roadmaster, or send him a request that the man should be discharged, and the roadmaster had the power to discharge him. The men under the section foreman, like the plaintiff, were paid by the agents of the company, who came along the line in a pay car. On the day of the accident, while the plaintiff was thus employed, he came to the station at Albuquerque about 6:45 o'clock in the morning for the purpose of going to his work on a hand car with one Mares, his co-laborer, and Charles Smith, his section foreman. The place where they were to work was about 8 or 9 miles north from Albuquerque on the line of the road. A few minutes before 7, the party, consisting of the section foreman, Mares,

and the plaintiff, started on a hand car for the place where they were to work during the day. They went north upon the road for 300 or 400 yards, and there the car was stopped, and the men got off and procured a barrel of water, which was placed on the car, and the men again started north to continue their ride. All three men worked the crank on the hand car, but just as they started Mares said to the foreman that he thought the work train seemed to be starting from Albuquerque towards them. The track at that point was straight, and the view to the station was unobstructed. Plaintiff then turned his head backward toward the station, when the foreman told him not to do that; that he had no business to do it; that it was not his business to watch for trains; and that he, the foreman, would take care of that. Plaintiff thereupon turned his head away from the station, and continued to look north, the way they were going. They worked the crank so that the car was going as rapidly as they could make it, all three men having their heads turned toward the north. In the meantime a work train backed out from the station at Albuquerque, going north, and continued backing rapidly until it was moving at the rate of 17 or 18 miles an hour. Before the men on the hand car had proceeded very far along the road they were overtaken by the work train, which ran over them, killing the foreman and badly injuring the plaintiff and Mares. Neither of the latter had heard the approach of the train. It was under the management of a conductor, and at that time there was a roadmaster on the train who had control of the line of the road where the accident occurred. Some of the hands on the work train saw the hand car a short distance before it was struck, and one of them tried to communicate with the engineer of the train, but failed. No one on the hand car was looking backward or saw the approach of the work train. The Supreme Court of the territory held that whatever negligence was proved as against the employees of the defendant, such negligence was that of the fellow servants of the plaintiff, and on that ground the judgment was reversed and judgment ordered in favor of the defendant. Mr. Justice Peckham, who delivered the opinion of the Supreme Court of the United States, says:

"We think the decision of the Supreme Court was right, and that the judgment entered thereon must be affirmed. The case of *Railroad Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914 [37 L. Ed. 772]; *Railroad Co. v. Hambly,* 154 U. S. 349, 14 Sup. Ct. 983 [38 L. Ed. 1009]; *Railroad Co. v. Peterson,* 162 U. S. 346, 16 Sup. Ct. 843 [40 L. Ed. 994]; and *Railroad Co. v. Charless,* 162 U. S. 359, 16 Sup. Ct. 848 [40 L. Ed. 999]—cover this case in all its aspects, and render entirely clear that the employees of the defendant herein, whose negligence caused the injury to the plaintiff, were his fellow servants at that time, and hence the defendant cannot be held liable to plaintiff for the injuries sustained by him as a result of that negligence. The counsel for the plaintiff has argued before us that the defendant must be held responsible because the plaintiff had been directed by the foreman, under whose orders he was placed, to look north while he was on the car, and had received the foreman's assurance that he (the foreman) would warn him of the approach of danger, and that as the foreman failed to do so, it was the failure of the defendant to do something which it was bound as a master to do in furtherance of the obligation it was under to see that the plaintiff had a reasonably safe place in which to perform his work. We do not perceive that the doctrine as to the duty of the master to furnish a safe place for the servant to work in has the slightest application to the facts of this case. There is no intimation in the evidence, nor is any claim made, that the hand car upon which the plaintiff was riding was not properly equipped and in good repair, and in every way fit for the purpose for which it was used. It was a perfectly safe and proper means of transit, in and of itself, from the station at Albuquerque to the point where the plaintiff was going to work. The negligence of the section foreman in failing to note the approaching train, and to give the proper warning, so that the car might be taken from the track, was not the neglect of the defendant in regard to the performance of any duty which, as master, it owed the plaintiff. If the car were rendered unsafe, it was not by reason of any lack of diligence on the part of the defendant in providing a proper car, but the danger arose simply because a fellow servant of the plaintiff failed to discharge his own duty in watching for the approach of a train from the south."

As this case was pending on the advent of statehood, the Oklahoma and United States Supreme Court cases cited are controlling on this court. As they seem to cover this case in all

its aspects, the judgment of the court below must be reversed and the cause remanded, with directions to grant a new trial.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; DUNN, J., dissents.