## SULSBERGER & SONS CO. v. CASTLEBERRY.

No. 4267. Opinion Filed February 17, 1914.

Rehearing Denied April 7, 1914.

(139 Pac. 837.)

1. **PLEADING—Objection—Evidence.** Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law.

2. **MASTER AND SERVANT—Safe Place to Work—Duty of Master.** The employer is under an implied contract with those whom he employs to exercise ordinary care to adopt and maintain suitable instruments and means with which to carry on the business in which he requires their service, and this includes an obligation to provide a reasonably safe place in which the servant, being himself in the exercise of ordinary care, can perform his duty safely, or at least without exposure to dangers that do not come within the obvious scope of his employment.

3. **SAME—Liability.** The duty of exercising ordinary care to furnish the servant a reasonably safe place to work is personal to the master, and the master is liable for injuries resulting from a breach of this duty, no matter what may be the ordinary duties or the rank or grade or department of the servant to whom its performance has been delegated.

4. **SAME.** The rule requiring a master to exercise ordinary care to furnish his servant a reasonably safe place to work is applicable, where the servant was directed to remove certain galvanized iron tanks or cans from the place where they were piled by the master; the place not being unsafe, except for the negligent manner in which the tanks or cans had been piled.

5. **SAME.** The fact that there may be dangers connected with the general class of work the servant is directed to perform which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due to dangers which the exercise of ordinary care would remove.

6. **SAME—Sufficiency of Evidence.** Evidence examined, and held sufficient to sustain the verdict attributing want of ordinary care to the master in the matter of furnishing the servant a reasonably safe place to work.

7. **SAME—Contributory Negligence—Assumption of Risk—Demurrer to Evidence.** Section 6, art. 23, Williams' Ann. Const. Okla., provides: ''The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury.''

8. **INSTRUCTIONS.** Instructions given and refused in connection with those of which counsel for defendant complain examined, and held, that there was no material error committed by the court below in the matter of giving or refusing to give instructions.

9. **APPEAL AND ERROR—Harmless Error—Instructions.** By section 4791, Rev. Laws 1910, the Supreme Court is required to disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Action by W. F. Castleberry against the Sulzberger & Sons Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Flynn, Chambers, Lowe & Richardson,* for plaintiff in error.

*Giddings & Giddings* and *J. T. Dortch,* for defendant in error.

KANE, J. This was an action, commenced by the defendant in error, plaintiff below, hereinafter called the plaintiff, against the plaintiff in error, defendant below, hereinafter called the defendant, to recover the sum of $10,000 as damages resulting from

a personal injury alleged to have been received by the plaintiff while in the defendant's employment. The answer set up a general denial, and alleged contributory negligence and assumption of risk. Upon trial to a jury there was a verdict for the plaintiff in the sum of $3,300, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The grounds for reversal, in the order they appear in the brief of counsel for defendant, are as follows: (1) The court erred in overruling defendant's objection to the introduction of any evidence; (2) the verdict was contrary to the law and the evidence; (3) the court erred in refusing to give instructions requested by the defendant; (4) the court erred in the instructions given.

The first error assigned is predicated upon the assumption that the petition does not state facts sufficient to constitute a cause of action. We think the petition is sufficient to resist the present mode of attack. The rule in this jurisdiction is that:

"Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law." (*Johnson et al. v. Chapman et al.*, 38 Okla. 42, 131 Pac. 1076.)

In another line of cases decided prior to statehood the rule is stated as follows:

"An objection to the introduction of any evidence under a petition is good only when there is a total failure to allege in the petition some matter essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law." (*City of Guthrie v. Finch*, 13 Okla. 496, 75 Pac. 288; *First Nat. Bank of Pond Creek v. Cochran*, 17 Okla. 538, 87 Pac. 855.)

Whilst the petition before us may be subject to the criticism that it is incomplete and indefinite in some particulars, and that it contains many conclusions of law, instead of stating the facts

in plain and concise language, as required by the statute, there is not a total failure of averment as to any essential matter.

Counsel for defendant assign many reasons why, in their judgment, the verdict is contrary to the law and the evidence; but, in view of the fact that the petition was drafted and the cause tried upon the theory that the defendant failed to exercise ordinary care to provide a reasonably safe and suitable place for the plaintiff to work—a nondelegable duty—and he must recover upon that theory, if at all, it will be only necessary to determine (1) whether the safe-place rule applies to the facts alleged, and which there is evidence reasonably tending to establish, and (2) whether the defendant is entitled to immunity under one of the following exceptions to the rule: (a) The safe-place rule does not apply to construction, modification, or repair work, or to the wrecking, demolition, or tearing down of buildings, structures, or piles, and (b) the safe-place rule does not apply in favor of one who is making an unsafe place safe.

The facts alleged, and which there was evidence reasonably tending to establish, may be stated as follows: For several months prior to the employment of the plaintiff the defendant had been engaged in erecting a large packing plant at Oklahoma City. In the progress of the work the ice-making department had reached a stage where two large steel tanks containing compartments for the reception of smaller galvanized tanks or cans had been practically completed. The large tanks were erected upon a platform about five feet above the floor of the room, and were so situated that there was what a witness described as "an aisle running east and west between the large tanks and the wall of the building about seven or eight feet wide." Some two or three months before the employment of the plaintiff the small tanks or cans, which weighed 50 or 60 pounds each, were stored in this room upon the floor under and about the large tanks. On the 11th day of September, 1911, the plaintiff was employed as a carpenter and set to work on the top of the large tank, fitting lids to go over the cans. After working at this sort of work for about three days, the foreman directed the plaintiff to go to the north side of the large tank, "and get the

small tanks out of that aisle, and clean it up, because they wanted the men to caulk the floor." The petition in substance alleges that these small tanks had been piled negligently, carelessly, and in various piles around the foot of the large tank in such a way that the same were not securely piled up one upon the other, but loosely placed in such a way that the same were liable to fall, and had been placed in such negligent and careless manner by other servants of the defendant company unknown to this plaintiff, prior to the time plaintiff was directed, as aforesaid, to do said work upon the large tanks, and before he was ordered to desist from working on the large tanks, and to work upon the smaller tanks, and that said place in which he was directed to work was therefore unsafe and unsuitable, and not a proper place in which this plaintiff should have been directed to work; that said cans or tanks were in various piles, and while this plaintiff was acting under the direction of said foreman in handling the tanks or cans in one pile, another pile of three cans fell upon his foot with crushing force, breaking and shattering the first, second, and third metatarsal bones of his left foot. The testimony of one witness, the foreman, as to the manner in which the small cans were piled is epitomized by counsel for the defendant in their brief as follows:

"There were some 1,400 cans in the room. The cans were piled upon each other flatwise in regular order under the tanks, and completely filled the space under the tanks. Also they were piled up in the aisle quite high, some of them in the aisle being ricked flatwise and others edgewise. Those under the tanks were piled systematically, and the first two tiers in the aisle were piled flatwise so they would be perfectly safe; but in the rear going out toward the east they were piled in an irregular form, sitting up endwise and sidewise, and piled in a very careless way on top of each other. I had known of them being in that condition for ten or twelve days. * * * Those cans were not piled in the aisle systematically as they were under the tanks; but in the aisle certain portions were piled up edgewise, and others were thrown pell-mell in a careless way over on top of each other so they were not self-supporting."

We think the evidence adduced at the trial was sufficient to take the case to the jury on the question whether the defendant

used ordinary care to provide the plaintiff a reasonably safe place to work. Generally it is the duty of the master to provide and maintain for his servants a reasonably safe place for the doing of their work. This duty is one of the exercise of ordinary care, and is personal to the master. *Bessex v. C. & N. W. R. Co.,* 45 Wis. 477; *Hulehan v. G. B., W. & Case,* 68 Wis. 520, 32 N. W. 529; *Van Dusen v. Letellier,* 78 Mich. 502, 44 N. W. 572; *Coombs v. New Bedford Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506; *Rogers v. Leyden,* 127 Ind. 50, 26 N. E. 210. And the master is liable for injuries resulting from a breach of this duty, no matter what may be the ordinary duties or the rank or grade or department of the servant to whom its performance has been delegated. *Atchison & Eastern Bridge Co. v. Miller, Adm'x,* 71 Kan. 13, 80 Pac. 18, 1 L. R. A. (N. S.) 682.

The principle is perfectly established that the employer is under an implied contract with those whom he employs to adopt and maintain suitable instruments and means with which to carry on the business in which he requires their service, and this includes an obligation to provide a safe place in which the servant, being himself in the exercise of ordinary care, can perform his duty safely, or at least without exposure to dangers that do not come within the obvious scope of his employment. *Van Winkle v. Machine Co.,* 29 Okla. 351, 116 Pac. 908; *Coombs v. New Bedford Cordage Co., supra.*

Unless the case falls within one of the exceptions hereinafter noticed, the safe place rule applies to such place as the master constructs, prepares, or selects for the doing of the servant's work. *Florence & C. C. Ry. Co. v. Whipps,* 138 Fed. 13, 70 C. C. A. 443. In the instant case the place selected by the master for the servant to do his work was the aisle wherein the small tanks or cans were piled, and what caused the place selected to be unsafe was the negligent piling of the cans by the master. In *Dumas v. Walville Lumber Co.,* 64 Wash. 381, 116 Pac. 1091, it was held that:

"The rule requiring a master to furnish a safe place to work was applicable, where plaintiff was working directly under a pile of lumber some twelve or sixteen feet high, taking down

and repiling the lumber; there being but little change in the pile while plaintiff was working around it, and the place not being unsafe if the lumber had been piled in the usual manner."

Another paragraph of the syllabus reads as follows:

"It was the employer's nondelegable duty, upon ordering workmen to take down and repile lumber, to see that the lumber was piled so as to make the place reasonably safe for work."

In *Libby v. Scherman*, 146 Ill. 540, 34 N. E. 801, 37 Am. St. Rep. 191, the plaintiff was engaged in piling barrels in the defendant's packing house. On the afternoon of the day before the accident the defendant's foreman noticed that a barrel on the second tier was leaking. As the row in which it was placed was already five barrels high, and considerable time would be occupied in tearing down the pile so as to take out the leaking barrel, the foreman had the head knocked in, and the contents removed. The evidence tended to show that after this was done the foreman said, in the hearing of the plaintiff: "Now everything is all right; go ahead to work." The next morning, while the plaintiff and his fellow workmen were engaged in piling the barrels, at a point directly opposite the empty barrel, the barrels on the top of the two rows next to that on which they were working fell and struck the plaintiff, breaking his right leg just above the ankle. Mr. Chief Justice Bailey, who delivered the opinion for the court, in discussing the complaint, which substantially contained the foregoing facts, says:

"The duty which is here alleged is the common-law duty incumbent upon every employer, and which he cannot delegate to others in such manner as to relieve himself from the consequences of its nonperformance, to furnish to his employee a reasonably safe place in which to work, and to use proper diligence to keep such place in a reasonably safe condition, and the negligence charged is merely a breach of that duty."

Whilst it is truer of personal injury cases than perhaps any other class that each case must be determined upon its own peculiar facts, the foregoing cases seem to us to be very analogous in principle to the one at bar. We think there was sufficient evidence adduced to sustain the verdict attributing want of ordinary care to the master in the matter of furnishing the servant a reasonably safe place to work.

Section 6, art. 23, Williams' Ann. Const. Okla., provides:
"The defense of contributory negligence or of assumption
of risk shall, in all cases whatsoever, be a question of fact, and
shall, at all times, be left to the jury."

The case at bar does not fall within the exceptions to the
rule hereinbefore set out under subheads "a" and "b." Clearly
plaintiff's injury was not caused by any changing condition due
to the prosecution of the work, and he was not engaged in
making an unsafe place safe. The evidence tends to show that
the large tanks had been made ready for the reception of some
of the small cans, and that the plaintiff was directed to go to
the north side of the tank and get the cans out of that aisle,
and put them in their places in the large tanks, not only be-
cause the large tanks were ready for their reception, and that
was the proper place for them, but those particular cans were
also in the way of the workmen who were about to caulk the
floor whereon they were piled. The plaintiff testified:

"Prior to that time I had been working on top of the tank
fitting lids to go over the cans. I had finished with the lids,
and Bittner (the foreman) told me to go down and get some of
those cans, and put them in the large tank. Mr. Bittner directed
us to go to the north side of the tank and get the cans out of
that aisle, and clean it up, because they wanted the men to caulk
the floor."

Moreover, we are of the opinion that counsel for the de-
fendant contend for a too strict application of the exceptions to
the safe place rule. If the language sometimes used by the courts
were taken literally, it would entirely free the master from lia-
bility for failing to supply safe instrumentalities, whenever the
work to be done by the servant consists in making safe the in-
strumentality the condition of which is alleged to import negli-
gence, or where the progress of the work necessarily changes the
condition of the place of work. "But," says Mr. Labatt (3
Labatt's Master and Servant, sec. 924), "it cannot be intended
to concede this unqualified immunity to the master. Such a view
is expressly repudiated in many cases, and impliedly so in many
others." The cases referred to by the author are collected in

a note to the text. After a further discussion of the question and the authorities touching it, Mr. Labatt continues:

"While it must be admitted that to reconcile the language used in the various cases, or to reconcile the decisions with reference to the actual facts involved, is a task of possibly insuperable difficulty, yet it is submitted that the principles underlying this large class of cases are very simple. In all cases the master must exercise ordinary care to render the place of work reasonably safe for his servants. Where, however, the very progress of the work causes the conditions surrounding the place of work to change, such as in the construction or demolition of a building, or where the work itself consists of rendering a dangerous place safe, the exercise of such ordinary care on the part of the master may, and frequently does, fail to give to the place of work the same amount of safety that the same degree of care would give to a place of work the conditions surrounding which were permanent. The master's duty is not altered; but the results of the exercise of that duty may differ very materially. The mere fact that there are dangers connected with all work of the general character of that here discussed, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed."

We have examined all the instructions given and refused in connection with those of which counsel for defendant complain, and are convinced that there was no material error committed by the court below in the matter of giving or refusing to give instructions. It is not every error of the class now under discussion that will warrant a reversal. *Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359. By section 4791, Rev. Laws 1910, the Supreme Court is required to "disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." In our judgment, no error was committed which affects any of the substantial rights of the defendant.

The judgment of the court below is therefore affirmed.

All the Justices concur.