## CITY OF DUNCAN v. TIDWELL.

No. 4337.   Opinion Filed June 22, 1915.

(150 Pac. 112.)

1.   **EVIDENCE—Presumptions—Basis.**  An inference is not ordinarily permissible from a prior inference, but ordinarily should have as its immediate base testimonial evidence that is certain.

2.   **SAME—Maintenance of Dumping Ground—Disease.**  In the absence of evidence reasonably tending to exclude other sources from which the **bacillus typhosus,** causing typhoid fever, may have been derived, or to show that such bacillus existed in any of the matter deposited in the defendant city's dumping ground, which was on a lower plane and 1,943 feet to the southeast of plaintiff's dwelling, it cannot be inferred that members of plaintiff's family contracted said disease from said dumping ground, notwithstanding the winds had blown from that direction toward plaintiff's dwelling house, and there was an unusually great number of flies at said ground and at said house during the summer preceding the attack of such fever.

3.   **APPEAL AND ERROR—Verdict—Judgment—Evidence.**  In the absence of evidence reasonably tending to support a verdict and judgment, the case must be reversed.

(Syllabus by Thacker, C.)

*Error from District Court, Stephens County;
J. T. Johnson, Judge.*

Action by L. A. Tidwell against the City of Duncan. Judgment for plaintiff, and defendant brings error. Reversed.

*Wilkinson & Morris,* for plaintiff in error.

*D. M. Smith* and *D. A. Bridges,* for defendant in error.

Opinion by THACKER, C.   Plaintiff in error will be designated as defendant and defendant in error as plaintiff, in accord with their respective titles in the trial court.

Plaintiff sued for $1,525 as damages for olfactory discomfort and for typhoid fever and recovered a verdict and judgment for $675 on account of the latter suffered by members of his family, and alleged to have been caused by defendant's negligence in respect to the condition of its dumping ground, which was on a lower plane and 1,940 feet southeast from plaintiff's dwelling house, about 2½ miles northeast of defendant city. In this dumping ground, it appears that dead animals and human excrement, with other garbage, perhaps, were deposited in trenches four or five feet deep; the dead animals being covered with dirt and the excretions with lime and, when the trenches were about full, with dirt, although more or less of both were sometimes exposed.

Plaintiff's grown daughter, Mrs. Ona Cooper, lived in a three-room house with plaintiff and family, and, following her affliction with this disease, his alleged cause of action arose in that his wife was sick 38 days, his daughter Ole 11 days, his daughter Minnie 49 days, and his daughter Robbie 9 days, of the same disease.

It appears that the *bacillus typhosus,* which causes typhoid fever, may be communicated directly and immediately by persons in whom it originates, or indirectly and mediately through a great many different carriers. It is understood that this bacillus multiplies in the bodies of persons suffering from the disease and is thrown off in excretions during the time of the disease, and in some instances long after recovery therefrom; there being cases reported in which such persons have excreted bacilli for weeks, months, and even years after recovery. It is said that the germ, when exposed to direct sunlight, dies in from four to eight hours; in crude sewage, dies in a few days; in ordinary water containing other organisms,

City of Duncan v. Tidwell.

dies in about a fortnight; in ordinary soil, dies in about 67 days; in sewer polluted soil will not die within 53 days, etc., etc.; and in sterilized soil lives upwards of 400 days. It is further said to be disseminated by means of polluted soil, food, and drink, particularly milk and water, the most familiar and important medium being water drank or contaminating vessels used for boiling other liquids; and it is thought that dust, flies, and clothing may convey the germs, but exhalation is not regarded as a channel of communication. See 27 Encyclopedia Britannica, 504, 505.

There is some evidence tending to show an abundance of flies both at the dumping ground and at plaintiff's house; but the evidence tends to show that flies do not travel farther than 1,200 feet, although it may be here observed incidentally that in "The House Fly, Disease Carrier, by L. O. Howard," pp. 51-56, it is said in effect that, while this fly will seldom travel farther than necessary for food, shelter, and proper nidus for its eggs, its power of flight is considerable, and the limit thereof is not established; besides, it appears that flies may be carried by the wind. It is there shown that J. S. Hine's experiment in the summer of 1910 with 350 flies captured and loosed at a barn after being marked with gold enamel resulted in their being observed up to the third day in dwellings from 20 to 40 rods from the barn, but not in a dwelling house a half a mile away, while Hewitt is there quoted as attributing to Dr. M. B. Arnold an experiment at the Monsall Fever Hospital, Manchester, in which out of 300 marked flies five were captured in fly-traps at distances of from 30 to 190 yards away.

The alleged olfactory discomfort suffered by plaintiff cannot be considered here, as it was not mentioned in

any instruction given or requested and did not enter into the verdict or judgment.

. There is no evidence whatever reasonably tending to prove that the condition of said dumping ground was the cause either of the sickness of Mrs. Cooper or the immediately following sickness of the members of plaintiff's family, on account of which this action was brought; and any inference of such cause is purely speculative and predicable only upon the prior inference that the human excrement deposited in the trenches in said lower ground contained the *bacillus typhosus* with which plaintiff's family were infected. As to the general rule against proof of a fact by successive inferences, each predicated upon the last preceding, see *St. Louis & San ·Francisco R. Co. v. Model Laundry,* 42 Okla. 501, 141 Pac. 970.

The evidence in this case does not even tend to exclude the innumerable sources, other than the dumping ground, from which plaintiff's family may have contracted the disease; and not only is direct or circumstantial evidence that the germ existed in the dumping ground wanting, but there does not appear to be so much as an expert opinion to that effect, or, if so, to the effect that the proven facts tended to show that such ground was the source from which plaintiff's family were infected.

We venture no opinion upon the question as to whether the jury might have found that flies or dust could have carried typhoid bacillus from the dumping grounds to plaintiff's dwelling house or to any other place where Mrs. Cooper or the other afflicted persons were, but there is certainly no evidence reasonably tending to prove that they did do so, nor that these grounds were the source from which the disease was contracted.

48—13

The foregoing views make it unnecessary to determine the effect upon this action of the failure of plaintiff to present to the defendant, before commencing action, a verified claim for the damages now demanded.

For the reasons stated, the judgment of the trial court should be reversed.

By the Court: It is so ordered.