**PATRICK'S Inc., a corporation doing business as Patrick's Foods, Plaintiff in Error,**

v.

**Ann MOSSERIANO, Defendant In Error.**

No. 36784.

Supreme Court of Oklahoma.

Nov. 22, 1955.

Rehearing Denied Jan. 31, 1956.

Martin Milam, Oklahoma City, for plaintiff in error.

Williams & Hansen, Gus Rinehart, Oklahoma City, for defendant in error.

HALLEY, Justice.

The parties will be referred to as they appeared in the lower court.

Plaintiff was employed by defendant as a waitress at defendant's restaurant at 23rd and Western in the City of Oklahoma City. She went to work for the defendant about the second week in December, 1952. On the evening of January 12, 1953, she reported for duty at 5:59. Her time to go to work was 6 P.M. She passed through the kitchen and down two steps into a stockroom back of the kitchen where she hung up her coat and got an apron and as she was walking back to go through the kitchen to the dining room she fell on the steps that went from the stockroom into the kitchen. Her testimony showed that these steps were wet; that they were not wet when she went down to get her apron but were wet when she came back. In order that this will be clear, we quote from her testimony:

"Q. Tell us in your own words, please, and speak slow enough so that the reporter will not have too much trouble getting it, will you tell us just exactly in your own words what you did from the time you came on that evening and just what happened to you until the time you were taken to the hospital? A. Well, I went to work at 6:00 o'clock in the evening; I went through the kitchen and down the step into the back room to get an apron; one of the waitresses had the keys to the linen closet, or to the place where we kept the linen supplies; I asked the waitress to get my apron; she unlocked the cabinet and gave me an apron. I tied the apron on and, meantime, this step was dry when I came out of the kitchen. It was just as it had always been. And while I was talking to the waitress and putting on the apron, I turned around from where I was talking to her and took a few steps to walk back into the kitchen and when I stepped on the step it was wet and I fell. Just as I stepped on it both feet flew from under me.

"Q. Did you know what had been going on with reference to that, or did you later learn? A. Well, evidently somebody had washed the step while I was in the back, but I didn't know it and I had no way of knowing it, because I could not see that the step was wet.

"Q. With reference to that step, will you tell the jury where the light was and how it was as it reflected on the step?

\* \* \* \* \* \*

"Q. (By Mr. Rinehart) Will you tell us about the lighting system there with reference to the steps? A. There was a neon light in the kitchen; the kitchen was well-lighted, but the step is between the kitchen floor and down into the stockroom floor. That is, two steps are between it and from the light situation, there was shadows

on the step. So from looking at the step you couldn't see whether it was wet or dry, just by looking at it.

"Q. Counsel here made some statement in his opening statement, he was going to show that the step was wet. Tell the jury whether or not it was not wet. A. Yes, it was wet. It exactly was.

"Q. Do you know that of your own knowledge? A. Yes, I do."

We also quote from her cross-examination:

"Q. That's right. What kind of floor do they have in the kitchen; do you remember? A. Sir, I don't remember.

"Q. Do you know whether it was wet or dry? A. When I went to work the floor was dry; the kitchen floor was dry.

"Q. Now what was your purpose in going into the kitchen, or wherever you were going? A. I had to hang my coat; it was cold in December. I had a coat on.

"Q. You went back to a little room off to the side, or what you call a stockroom, and hung up your coat? A. Yes, sir.

"Q. And it was then after hanging up your coat you came back through across these steps, is that right? A. No, I stopped and got an apron before I came back across the steps.

*  *  *  *  *  *

"Q. I believe you stated on Direct Examination that when you came down the steps to go and take your coat off that the steps were dry. A. They were.

"Q. And when you came back they were wet? A. Yes, sir, they sure were.

"Q. How long was it from the time you went down these steps to go to the cloakroom before you came back? A. It could have been a period of anywhere from four to six minutes."

The only witnesses that plaintiff offered were herself and a physician. On the ques-

tion of the condition of the steps at the time of her fall, plaintiff was the sole witness. As a result of the fall, she suffered a broken arm. The trial judge submitted the cause to the jury and she was awarded a verdict for $8,000. There was no evidence offered as to who caused the steps to be wet and the evidence showed that it could not have been wet for more than six minutes.

■ The defendant presents three propositions for reversal of this cause. The first is that the trial court erred in overruling the special appearance and motion of the defendant to quash summons and purported service. With this contention we cannot agree for the reason that the sheriff's return on the summons showed the service was made "by delivering a true and correct copy hereof, with endorsements thereon, to Mrs. Pat Williams, she being the Managing Agent in charge of said corporation, and the President, Vice-President, Secretary, Treasurer, or other chief officer not being found in my County", and no evidence was offered to show that Mrs. Williams was not the managing agent of the restaurant belonging to a domestic corporation. We think this question is adequately disposed of in Muskogee Electric Traction Co. v. Green, 91 Okl. 200, 217 P. 155; Colonial Refining Co. v. Lathrop, 64 Okl. 47, 166 P. 747, L.R.A. 1917F, 890; Humphrey v. Coquillard Wagon Works, 37 Okl. 714, 132 P. 899, 49 L.R.A.,N.S., 600; Katschor v. Eason Oil Co., 185 Okl. 275, 91 P.2d 670. The service in this case is in conformity with 12 O.S.1951 § 163 and is not in conflict with section 1.17, 18 O.S.1951.

■ For its second contention the defendant urges that the trial court erred in admitting testimony of the lighting condition at the place of the accident. Under our holding in Railway Express Agency, Inc., v. Britton, 171 Okl. 580, 43 P.2d 119, this contention has merit because the plaintiff's petition makes no claim that the accident was caused by improper lighting. In that case we held that where a petition states specific acts of negligence, evidence not embraced in the acts charged is not

admissible. No where in the plaintiff's pleading in the case at bar was any allegation made as to improper lighting. However, we consider this contention of minor importance for we do not believe that the defendant was seriously prejudiced by the admission of this testimony and we will base this opinion on the consideration of the third contention of the defendant.

█ Now as to the third contention that the trial court erred in refusing to sustain its demurrer to the plaintiff's evidence and in denying the defendant's motion for directed verdict, we agree. The defendant has set up six subheads under the argument on this point. We will not attempt to take up each one. Since the evidence of the plaintiff only showed that this step on which the plaintiff fell was wet for a period of less than six minutes and no evidence was shown as to how it got wet, the only possible way in which liability could be pinned upon the defendant under these circumstances would be to infer that the wet step was caused by a fellow servant of the plaintiff and then the inference would have to be made that this fellow servant was incompetent and further infer that the defendant was careless and negligent in the hiring of the fellow servant. We have many times held that you cannot pile an inference upon an inference in order to attach liability on the defendant unless the first inference is a justifiable conclusion from the evidence, testimonial or circumstantial and the second inference is justifiable from the first inference by itself or in connection with other evidence, testimonial or circumstantial. Even though we were to infer that the fellow servant was responsible for the step being wet, we could not infer that he was incompetent or that the defendant was negligent in hiring him. We said in Gypsy Oil Co. v. Ginn, 152 Okl. 30, 3 P.2d 714, 717:

"The inference of negligence must be based upon something other than mere conjecture, speculation, or probability, and it is not sufficient to introduce evidence of a state of facts which is simply consistent with, or indicates a mere possibility, or probability as to the existence of negligence, or which suggests with equal force and leaves fully as reasonable an inference of the nonexistence of negligence. But the facts must be of such a nature and so related to each other that the inference contended for is the more probable or reasonable to be drawn therefrom. * * *"

See also Tweed v. First National Bldg. Corp., 203 Okl. 31, 218 P.2d 356; Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 32 A.L.R. 1490; City of Duncan v. Tidwell, 48 Okl. 382, 150 P. 112. Certainly to attach liability upon the defendant in this case, since it was a corporation, it would have to be shown that the fellow servant responsible for this step being wet was incompetent and that the defendant through its officers failed to exercise ordinary or reasonable care in selecting, employing or retaining such servant. There is no evidence in the record showing any negligence on the part of the defendant in this regard. Mid-Continent Petroleum Corp. v. Fleming, 196 Okl. 605, 167 P.2d 366.

█ These propositions are well settled in our law. A master is not liable to servant for accidental injuries or such as occur without any act of negligence by master. O'Neal v. Vie, 94 Okl. 68, 220 P. 853. It was the burden of the injured servant to allege and prove primary negligence upon the part of the defendant. This was not done in the case at bar. Bell v. McDonnell, 156 Okl. 68, 9 P.2d 735. In this case no negligence of the master has been shown.

█ Our law is well settled that an employer must furnish such a place to work as a reasonably prudent person would furnish under like circumstances, but the employer is not an insurer. Sears, Roebuck & Co. v. Skeen, 207 Okl. 180, 248 P.2d 582. We further hold that a mere fact a servant was injured does not establish even prima facie the negligence of or breach of duty by the master.

█ Whether or not an employer is guilty of negligence depends upon the question of whether he exercised reasonable care under the circumstances existing at

the time, not whether he had done everything which it was possible to do in the light of every possible danger that might exist.

It has long been settled in this State that the master's liability in respect to warning his servants depends upon his knowledge, actual or constructive, of the danger to which his servant was exposed, and negligence cannot be imputed to him unless he knew, or ought, in the exercise of ordinary care and diligence, to have known, that a warning was necessary. Thurlow v. Failing, 133 Okl. 277, 272 P. 368.

Under the facts in this case it would cast too great a burden upon an individual or corporation carrying on a restaurant business to be held responsible every time that water is spilled upon the floor in the kitchen or the adjuncts of the kitchen in a restaurant. This Court in an early opinion held that where a corporation uses reasonable effort and precaution to furnish a safe place for its servant to work and reasonable care was taken to provide competent co-employees it was under no duty to notify a servant of transitory dangers arising out of the performance of mere detail of the work, which may be caused by acts of a fellow workman. E. Van Winkle Gin & Machine Co. v. Brooks, 29 Okl. 351, 116 P. 908. This case has never been modified.

We cannot see how a liability can attach to the master in this case for he is not liable for every casualty and is not required to make a place absolutely safe, but discharges his full duty if he exercises ordinary care to make it reasonably safe. No evidence was shown that the absence of the handrail had anything to do with plaintiff's falling in this case. She was not going down the steps; she approached them to go up the steps. No evidence was shown as to the height of the steps or the width and no where did the plaintiff contend that her fall was due to anything else except that the step was wet.

We do have a case in this State involving a slippery floor which was submitted to the jury and plaintiff recovered. That was Interstate Compress Co. v. Arthur, 53 Okl. 212, 155 P. 861. There the slippery condition was the result of snow and ice and a leaky water pipe and had existed for several days. Work in a cotton compress is considered a fairly dangerous employment in comparison with a restaurant. The facts are so different between the case at bar and that case it is no authority for the plaintiff's position.

There are several cases from other jurisdictions which we think sustain the defendant's position and they are: Charpentier v. Great Atlantic & Pacific Tea Co., 130 Me. 423, 157 A. 237; Myers v. Strauss, Mo., 264 S.W. 801; Tucker Duck and Rubber Co. v. Harvey, 202 Ark. 1033, 154 S.W. 828; De Mars v. Heathman, 132 Or. 609, 286 P. 144. See also 57 C.J.S., Master and Servant, § 534 (f) and note 48.

When no evidence is submitted in the trial of personal injury action to establish primary negligence of the defendant, the trial court must sustain a demurrer to plaintiff's evidence or direct a verdict for the defendant. Sears, Roebuck & Co. v. Skeen, supra. We are of the opinion that the plaintiff did not meet the burden that was upon her to show negligence of the defendant so this case is reversed with directions to the trial court to enter judgment for the defendant.

JOHNSON, C. J., and CORN, DAVISON and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and BLACKBIRD, J., dissent.